645 So.2d 883 (1994)
Samuel Irvin WELLS, a Minor, by Teddy Franklin WELLS, His Natural Father and Guardian
v.
PANOLA COUNTY BOARD OF EDUCATION.
No. 91-CA-00101.
Supreme Court of Mississippi.
October 13, 1994.
Rehearing Denied December 21, 1994.
*885 Benjamin E. Griffith, Griffith & Griffith, Cleveland, for appellant.
D. Ronald Musgrove, Smith & Musgrove, Batesville, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
In the early morning of May 12, 1989, a school bus accident on Highway 6 near Batesville injured Sammy Wells and several other students. The Accident Contingent Fund statutes, Miss. Code Ann. 1972 §§ 37-41-39 and 37-41-41 (Supp. 1992), limited recovery for injuries arising from school bus accidents to $10,000 per person, $50,000 aggregate.[1] Wells, whose expenses exceeded $600,000, filed a claim against the Panola County School Board for five million dollars in compensatory damages and five million dollars in punitive damages. Wells' claim was dismissed on the Board's 12(b)(6) motion, and he appealed to this Court, raising the following constitutional challenges to the Mississippi Accident Contingency Fund's $10,000 limitation:
I. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 1, ARTICLE I AND SECTION 144, ARTICLE VI OF THE MISSISSIPPI CONSTITUTION OF 1890, BY LEGISLATIVELY USURPING CORE JUDICIAL POWER AND ARBITRARILY IMPOSING DAMAGE LIMITATIONS UPON SUITS ON BEHALF OF MINOR SCHOOL CHILDREN?
II. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 24, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, BY DESTROYING THE CONSTITUTIONAL *886 GUARANTEE THAT ALL COURTS IN THIS STATE SHALL BE OPEN AND THAT EVERY PERSON FOR INJURY DONE HIM "SHALL HAVE REMEDY BY DUE COURSE OF LAW?"
III. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 14, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY DEPRIVING SAMMY WELLS OF HIS FUNDAMENTAL RIGHT TO REDRESS, IMPOSING AN ARBITRARY AND CAPRICIOUS LIMITATION ON RECOVERY BY A FORESEEABLE CLASS OF MINOR SCHOOL CHILDREN INJURED AND DAMAGED AS IN THE INSTANT CASE, AND BY CREATING A LEGISLATIVE CLASSIFICATION TO THE DETRIMENT OF SAMMY WELLS AND THOSE SIMILARLY SITUATED WHICH LACKS A RATIONAL BASIS AND A REASONABLE RELATIONSHIP TO ANY LEGITIMATE OBJECTIVE?
IV. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 17, ARTICLE II OF THE MISSISSIPPI CONSTITUTION OF 1890, BY TAKING PRIVATE PROPERTY WITHOUT DUE COMPENSATION, NAMELY, A CHOSE IN ACTION WHICH HAS INURED TO THE BENEFIT OF SAMMY WELLS?
V. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY CONSTITUTING INVIDIOUS DISCRIMINATION BETWEEN A FORESEEABLE AND IDENTIFIABLE CLASS OF SCHOOL AGE CHILDREN WHO OF NECESSITY MUST PLACE THEIR LIVES AND SAFETY IN THE HANDS OF BUS DRIVERS EMPLOYED BY ELECTED SCHOOL BOARDS TO TRANSPORT STUDENTS TO AND FROM SCHOOL, AND ALL OTHER VICTIMS OF VEHICULAR ACCIDENTS WHO HAVE A TORT REMEDY UNDER COMMON LAW?
VI. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 31, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, AND THE SEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY PLACING AN ARBITRARY LIMIT ON THE AMOUNT THAT THE TRIER OF FACT CAN AWARD AS COMPENSATORY DAMAGES AND DEPRIVING SAMMY WELLS AND OTHERS SIMILARLY SITUATED OF THEIR CONSTITUTIONALLY GUARANTEED RIGHT OF TRIAL BY JURY?
VII. DID THE LOWER COURT ERR IN DISMISSING THE COUNTERCLAIM OF SAMUEL IRWIN WELLS PURSUANT TO RULE 12(b)(6) OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE AND IN DENYING WELLS' MOTION TO TRANSFER TO THE CIRCUIT COURT?
We find that the Accident Contingent Fund statutes, repealed as of October 1, 1993, violated neither the state nor the federal constitutions, and hold that the Chancellor properly granted the Board's motion to dismiss, and denied Wells' motion to remove to the circuit court.

FACTS AND PROCEDURAL HISTORY
At around 7:15 a.m. on May 12, 1989, Samuel Irvin Wells and his younger brother Jeffrey Allen Wells began to cross Highway 6 in front of their home to board a Panola County school bus, which had stopped to pick *887 them up. As Sammy Wells was walking in front of this bus, it was struck from behind by a second Panola County school bus. The force of this collision caused the first bus to hit Sammy Wells. His injuries were extensive, and his expenses for hospitalization, surgery, and physical therapy exceeded $600,000.
On June 9th, 1989, the Panola County Board of Education filed a Petition to Settle Claims in the Panola County Chancery Court, Second District. The Board's liability for the accident was governed by Miss. Code Ann. § 37-41-37 (Supp. 1992), providing a cause of action for injuries arising from school bus accidents[2]; Miss. Code Ann. § 37-41-39 (Supp. 1992), establishing the state-wide Accident Contingent Fund; and Miss. Code Ann. § 37-41-41 (Supp. 1992), limiting recovery by parties injured in school bus accidents to $10,000 per person, $50,000 aggregate. Section 37-41-41 also provides for proration of claims by the chancellor where total claims exceeded $50,000.[3]
On September 1, 1989, Wells filed a counterclaim charging the driver of the second school bus with "grossly negligent and reckless driving," and alleging that the Panola County Board of Supervisors was liable to him under the doctrine of respondeat superior. Wells sought a declaratory judgment that by limiting recovery, the Accident Contingent Fund statutes violated the state and federal constitutions. He demanded compensatory damages of five million dollars and punitive damages of five million dollars. Additionally, Wells filed a motion to transfer his claim to the Panola County Circuit Court for a jury trial.
On October 12, 1989, the Board filed a 12(b)(6) motion to dismiss, asserting that the Accident Contingent Fund statutes provided the sole remedy for injury arising from school bus accidents, and requesting the Court to uphold the constitutionality of these statutes.
On January 2, 1991, the chancellor filed his Findings of Fact and Law. He noted that pursuant to § 37-41-41, the Court had prorated the claims of all children who had sustained injuries in the accident. Of the $50,000 maximum available under the statute, $10,000 had been allotted to Sammy Wells; the remaining $40,000 had been divided *888 among the other children. The chancellor also noted that the Board had no liability insurance on the buses or any other applicable insurance coverage.
On January 15, 1991, the chancellor granted the Board's 12(b)(6) motion, dismissing with prejudice Wells' Counterclaim and Motion to Transfer to Circuit Court. Wells appealed to this Court on January 24, 1991.

DISCUSSION OF ISSUES

A.

Introduction
Before proceeding to Wells' assignments of error, we briefly discuss the statutes challenged by this appeal.

The Accident Contingent Fund Statutes
The Accident Contingency Fund Act, passed by the Mississippi Legislature in 1953, established the Accident Contingent Fund and authorized claims by students injured as a result of negligence by school employees operating buses.[4] Maximum available coverage was $5000 per child. In 1964, the legislature extended coverage to any person or damage to property resulting from such negligence, and set a limit of $50,000 per accident. In 1982, the maximum limit of recovery was raised to $10,000 per person, $1,000 for property damage, and $1,000 for medical expenses. The $50,000 limit per accident remained unchanged. These limits were reflected in the 1992 Supplement to the 1972 Miss. Code Ann.[5]
As noted above, the three Accident Contingent Fund statutes (§ 37-41-37, § 37-41-39, and § 37-41-41), all carried a repeal date of October 1, 1993. Miss. Code Ann. § 11-46-21 (Supp. 1992) provided that on October 1, 1993, all money in the Accident Contingent Fund would be transferred to the Tort Claims Fund created by § 11-46-17, and that the Accident Contingent Fund would cease to exist.
We note that Wells' claim was dismissed on a 12(b)(6) motion. This Court conducts de novo review of questions of law raised by 12(b)(6) motions. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990); UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987). In the case at bar, the question of law is whether the challenged statutes violate provisions of the state or federal constitution. This Court will strike down a statute on constitutional grounds only where it appears beyond all reasonable doubt that such statute violates the constitution. Anderson v. Fred Wagner, Etc., 402 So.2d 320, 321 (Miss. 1981); Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 803 (1938). In short, if the statutes challenged in this case are not unconstitutional, the Board was entitled to dismissal as a matter of law.
We now proceed to Wells' assignments of error.

I. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 1, ARTICLE I AND SECTION 144, ARTICLE VI OF THE MISSISSIPPI CONSTITUTION OF 1890, BY LEGISLATIVELY USURPING CORE JUDICIAL POWER AND ARBITRARILY IMPOSING DAMAGE LIMITATIONS UPON SUITS ON BEHALF OF MINOR SCHOOL CHILDREN?
Section 1, Article I of the Mississippi Constitution of 1890 provides:
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another. *889 Section 144, Article VI of the Mississippi Constitution of 1890 provides:
The judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this constitution.
Wells argues that the Accident Contingent Fund statutes violated the separation of powers doctrine embodied in the above sections of the Mississippi Constitution, by "legislatively usurping core judicial power and arbitrarily imposing damage limitations upon suits on behalf of minor school children." However, Wells advances no argument or explanation as to how the Accident Contingent Fund violated the separation of powers doctrine. In fact, when we abolished common-law sovereign immunity in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), we expressly stated that we were doing so because the judiciary was not the appropriate branch of government to regulate sovereign immunity. In other words, the judiciary was encroaching into legislative territory:
We agree that the time has arrived when this Court should recognize that the judiciary is no longer the branch of government to supervise and control the extent to which persons with rightful claims against the sovereign may propound those claims. In fact, in a number of cases we have already said the problem is one our system of government places on the legislative branch. See Berry v. Hinds County, 344 So.2d 146 (Miss. 1977); and Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377 (Miss. 1977).
Pruett, 421 So.2d at 1051. Pruett was a mandate to the legislature to assume full responsibility for the regulation of sovereign immunity; that is, an invitation for the very "statutory sovereign immunity" that Wells claims violates the constitutional separation of powers doctrine. Of course, this Court may not agree with the wisdom of particular immunity statutes passed by the legislature, but in this area, as in all others:
Courts cannot pass judgment upon the wisdom, practicality or even folly of a statute. We must follow it unless it clearly impinges upon some Constitutional mandate, and our Constitution neither gives wise statutes passing grades nor flunks the improvident ones. This is solely the perogative of the people acting through their Legislature.
Presley v. Miss. State Hwy. Comm., 608 So.2d 1288, 1295 (Miss. 1992). See also Mississippi Milk Commission v. Vance, 240 Miss. 814, 856, 129 So.2d 642 (1961); Bobo v. Board of Levee Comm'rs for Yazoo-Mississippi Delta, 92 Miss. 792, 811, 46 So. 819, 823 (1908).
Further, in Presley, we stated our rationale for abrogating judicial sovereign immunity and deferring to the Legislature in this realm:
There are many sound reasons why an immunity granted the state or political subdivision should come solely from Legislative enactment. Sovereign immunity is a matter of public policy and our Legislature determines what is in the public interest. In the granting or withholding of sovereign immunity, there are gradations, competing interests to balance, that of fairness to our citizens and proper functions of state government, and which can only be accomplished by statutory law.
Presley, 608 So.2d at 1291 (citations omitted).
The Accident Contingent Fund is an example of statutory law which balances the competing interests of fairness and proper state function. The Accident Contingent Fund represents the Legislature's determination that persons injured in school bus accidents should not be without remedy  and its determination that such remedy should not be without limit. This is precisely the balancing we envisioned in Pruett and Presley. Such balancing is properly the function of the legislature; therefore, the statutes do not violate the constitutional separation of powers.
In sum, nothing in our decisions support Wells' argument that the Accident Contingent Fund statutes violate Section 1, Article 1, or Section 144, Article VI of the Mississippi Constitution of 1890.

II. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 24, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, BY *890 DESTROYING THE CONSTITUTIONAL GUARANTEE THAT ALL COURTS IN THIS STATE SHALL BE OPEN AND THAT EVERY PERSON FOR INJURY DONE HIM "SHALL HAVE REMEDY BY DUE COURSE OF LAW?"
Section 24, Article 3 of the Mississippi Constitution of 1890 provides:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial or delay.
Wells argues that the Accident Contingent Fund statute violated Section 24, Article 3 of the Mississippi Constitution of 1890, by destroying the constitutional guarantee that all courts in this state "shall have remedy by due course of law."
The Board argues that "injury" in the context of this constitutional provision has been construed as "legal injury." See Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955). In Wells' case, the Board contends "there can be no legal injury beyond the waiver of immunity;" therefore, Wells has no standing or right to assert this provision of the Constitution. That is, Wells "has no legal right to sue above the waiver because of sovereign immunity."
In Turrentine v. Brookhaven, Miss. School Dist., 794 F. Supp. 620 (S.D.Miss. 1992), the district court noted that "in several decisions, the Mississippi Supreme Court has held or implied that Section 24 does not create an unlimited right of access to courts." Id. at 626. For example, in Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433 (1954), we held that the Workmen's Compensation Law, which substituted statutory for common-law remedies, did not violate the open courts provision of the state constitution.[6] We rejected arguments that the law established an arbitrary measure of damages for personal injuries, stating:
We need not, therefore, elaborate the rule that the constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to obtain a permissible legislative object... . [T]here is no vested right in any remedy for a tort yet to happen which the Constitution protects. Except as to vested rights, the legislative power exists to change or abolish existing statutory and common-law remedies... .
Walters, 220 Miss. at 509, 71 So.2d at 441 (quoting Holder v. Elms Hotel Co., 92 S.W.2d 620, 624 (Mo. 1936) (citations omitted)). In both Walters and the case at bar, the legislature chose to substitute one remedy for another: a statutory cause of action in place of the remedy available at common law. (The Board, of course, would have us note that at common law, no remedy was available to persons injured in school bus accidents because of the defense of sovereign immunity). It is significant to the case at bar that in upholding the Workmen's Compensation Law, we noted that it might serve to limit an employee's recovery, as compared with his possible recovery under the old system.[7] By analogy, the mere fact that the Accident Contingent Fund limits the amount of damages recoverable does not render it constitutionally suspect. See also Brown v. Estess, 374 So.2d 241 (Miss. 1979) (immunity given to officer or agent of a corporate employer under Workmen's Compensation Act does not violate Section 24 of the state constitution).
The majority of courts in other jurisdictions have found that damage limitations in suits against government entities do not violate open courts provisions similar to that of Mississippi's Constitution.[8]
One argument underlying these decisions is that a constitutional guarantee of a remedy does not mean that recovery must be absolute *891 or that it may be unlimited. In Ryszkiewicz v. City of New Britain, 193 Conn. 589, 479 A.2d 793 (1984), the Connecticut Supreme Court held that a $1000 statutory limitation on damages for injuries caused by damaged sidewalks in the City of New Britain was not offensive to the state constitution's open courts provision, almost identical to our own. The court stated:
Given that governmental immunity was a well established judicial principle at the time of the Connecticut constitution's adoption in 1818 and in 1965, the provision granting access to the courts for redress of grievances found in article first, § 10 cannot be construed as granting an unqualified right to recover unlimited damages from government entities.
Ryszkiewicz, 479 A.2d at 799.[9]
In Estate of Cargill v. City of Rochester, 119 N.H. 661, 406 A.2d 704 (1979), the New Hampshire Supreme Court upheld a $50,000 limit on tort recovery from governmental units for personal injury. The court stated that the purpose of the state constitution's guarantee that all citizens were "entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character" was to make civil remedies available and to guard against arbitrary and discriminatory infringements on access to the courts.[10] The court stated that this provision "does not guarantee that all injured persons will receive full compensation for their injuries." Id. 406 A.2d at 704.
In Opinion of the Justices, 126 N.H. 554, 493 A.2d 1182 (1985), the New Hampshire Supreme Court explained why statutory damage limitations in tort claims against the State were not unconstitutional:
In Estate of Cargill we upheld the constitutionality of RSA 507-B:4 (1977) which limited tort damages recoverable from political subdivisions of the State to $50,000 per person for bodily injuries. We found that the relationship between tort plaintiffs and governmental units was distinguishable from the relationship between plaintiffs and nongovernmental tortfeasors, and therefore held that the two classes of plaintiffs, in this respect, are not similarly situated. Among these distinguishing features is the fact that citizens have a legal right to influence the policies of their government, including its decisions on safety precautions, employee conduct, and the acquisition of liability insurance.
Opinion of the Justices, 493 A.2d at 1192. See also Meech v. Hillhaven West, Inc., 238 Mont. 21, 776 P.2d 488 (1989) (state constitutional provision guaranteeing remedy guarantees only right of access to courts to seek remedy recognized by common law or statutory authority; it does not guaranty fundamental right to full legal redress).
The other main rationale for holding that constitutional open courts provisions do not bar statutory limitation of damages recoverable against government entities is as follows: since the injured party had no right at common law to recover from the State for injury, due to sovereign immunity, damage limitation statutes deprive the party of no remedy or property right. In Jetton v. Jacksonville Electric Authority, 399 So.2d 396 (Fla. Dist. Ct. App. 1981), the court upheld a statute which limited recovery in tort from the State to $50,000 per person, $100,000 per accident, applying to tort actions arising from proprietary as well as governmental functions. The statute was held not to violate the state constitution's guarantee that "the courts shall be open to every person for redress of any injury."[11] A man injured by an city-owned electric transmission line argued that prior to the law's passage, his recovery would have been unlimited because the operation of an electric plant is a proprietary function. He further argued that legislative alteration of his prior right, without any substitute remedy, interfered with his constitutional right to redress. The court rejected these arguments, *892 stating that the constitution did not require a substitute remedy "unless legislative action abolished or totally eliminated a previously recognized cause of action." The statute in question limited, but did not abolish a cause of action; therefore, the court held, it was not constitutionally suspect. Moreover, the court found that the statute, by abolishing the proprietary  governmental distinction, created a general liability where there had been none before, benefitting a larger class. The court stated:
Finding that the class as a whole retains access to prior remedies or achieves access to greater remedies, as a result of the legislation, ends the constitutional inquiry, regardless of limitations placed on the recoveries of some within the class. Any rule preventing the legislature from decreasing the remedies of some within the affected class, while increasing the remedies of others, would appear to commit Florida constitutionally to an ever expanding tort liability system. By no means is that a recognized constitutional principle.
Jetton, 399 So.2d at 399. See also Crowe v. John W. Harton Memorial Hospital, 579 S.W.2d 888 (Tenn. Ct. App. 1979) (in medical malpractice action against city-owned hospital, statute limiting damages recoverable from government tortfeasors to $20,000 did not violate court access provision of constitution; since plaintiff had no cause of action at common law for city's negligence, law deprived him of no remedy or property right); Texas Dept. of Mental Health & Mental Retardation v. Petty, 817 S.W.2d 707 (Tex. Ct. App. 1991) ($250,000 damage limitation of State Tort Claims Act does not violate open courts provision of state constitution, which ensures that those bringing common-law causes of action will not be unreasonably denied right to redress for their injuries).
Wells offers several cases holding that statutory damage limitations violate constitutional open courts provisions. One such case is Lucas v. United States, 757 S.W.2d 687 (Tex. 1988), in which the Texas Supreme Court held unconstitutional a $150,000 cap in medical malpractice actions. Significantly, the Court found that medical malpractice victims were being deprived of a remedy available at common law. The Court stated:
Our first concern with the statute is that the legislature has failed to provide Lucas any adequate substitute to obtain redress for his injuries.
Lucas, 757 S.W.2d at 690. In contrast, the Accident Contingent statutes in the case at bar did not deprive Wells of a cause of action available at common law; in fact, the statutes created a remedy where none existed before.
In sum, authority outside this jurisdiction suggests that state constitutional guarantees of "open courts" and "remedies" are not violated by statutory limitations on damages recoverable from government tortfeasors. The predominant rationales for this conclusion are 1) the "remedy" guaranteed is not absolute or limitless; and 2) the State was immune at common law, and no remedy was available, so injured parties are not deprived of any right or remedy. That recovery under the Accident Contingent Fund was limited did not, in and of itself, render the statute constitutionally suspect; the Mississippi open courts provision need not, and has not been construed as guaranteeing limitless or absolute recovery for injury. The Accident Contingent Fund did not abrogate a common law right of action, nor did it violate the open courts provision of Mississippi's Constitution of 1890 on those grounds.

III. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 14, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY DEPRIVING SAMMY WELLS OF HIS FUNDAMENTAL RIGHT TO REDRESS, IMPOSING AN ARBITRARY AND CAPRICIOUS LIMITATION ON RECOVERY BY A FORESEEABLE CLASS OF MINOR SCHOOL CHILDREN INJURED AND DAMAGED AS IN THE INSTANT CASE, AND BY CREATING A LEGISLATIVE CLASSIFICATION TO THE DETRIMENT *893 OF SAMMY WELLS AND THOSE SIMILARLY SITUATED WHICH LACKS A RATIONAL BASIS AND A REASONABLE RELATIONSHIP TO ANY LEGITIMATE OBJECTIVE?
Wells argues that the Accident Contingent Fund statutes violated the due process clauses of the state and federal constitutions, by depriving him of his fundamental right to redress, imposing an arbitrary and capricious limitation on recovery by a foreseeable class, and creating a legislative classification lacking a rational basis and reasonable relationship to any legitimate objective. He cites a number of cases from other jurisdictions holding statutory damage caps unconstitutional on due process grounds.
The Board argues that the standard of review is whether a statute has a rational basis or a reasonable relation to a proper governmental purpose. It submits that the Accident Contingent Fund statutory scheme was "a method to deal with the 500,000 potential claims per day," and as such is reasonable and rationally related to a valid government purpose.
The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deprive any person of life liberty, or property, without due process of law... ." In Turrentine v. Brookhaven, Miss. School Dist., 794 F. Supp. 620 (S.D.Miss. 1992), the court noted that in determining whether a statute violates the due process clause, it must first be determined which standard of review applies. A statute implicating a "suspect class," such as race, or interfering with the exercise of a fundamental right, such as voting, is subject to strict scrutiny. Absent a suspect class or a fundamental right, a reviewing court will apply a less stringent standard of review, the "rational relation" test. Id. at 624. The United States Supreme Court has stated:
If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied.
Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934); See also Pruneyard Shopping Center v. Robins, 447 U.S. 74, 84-85, 100 S.Ct. 2035, 2042-2043, 64 L.Ed.2d 741 (1980).
Section 14 of Article 3 of the Mississippi Constitution provides that "(n)o person shall be deprived of life, liberty, or property except by due process of law." We have stated:
When applied to substantive rights [the due process clause] is now interpreted to mean that the government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power.
Albritton v. City of Winona, 181 Miss. 75, 97, 178 So. 799, 804 (1938).
As noted in Turrentine, the Accident Contingent Fund does not implicate a suspect class. Nor does it interfere with a fundamental right, for "clearly there is no fundamental right to bring suit against the State of Mississippi or one of its political subdivisions." Turrentine, 794 F. Supp. at 624-625. Therefore, the proper standard of review to apply is the rational relation test. Under both federal and state due process clauses, it must be shown that the Accident Contingent Fund was rationally or reasonably related to a proper legislative purpose.[12]
In Adams v. Petal Municipal Separate School Systems, 487 So.2d 1329 (Miss. 1986), we upheld Miss. Code Ann. § 71-3-5, exempting school districts from mandatory workmen's compensation coverage. We stated:
There is a good and logical reason for [the exemption]. Financial resources are simply not available to all of the varied schools and school systems within this State for the purchase of workmen's compensation insurance coverage... . Therefore, there is a rational basis for permitting compensation *894 coverage for schools to remain discretionary rather than mandatorily imposed.
Id. at 1330. In other words, we found the conservation of scarce financial resources by school systems to be a proper legislative purpose. We also found that the statute was rationally related to achievement of this purpose. Similarly, the purpose of the Accident Contingent Fund statutes appeared to be the conservation of scarce financial resources. The statutes recognize that school districts cannot afford limitless recovery by tort claimants. Limiting available damages is similarly rationally related to the purpose of conserving a school district's resources.
In upholding the Workmen's Compensation Law in Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433 (1954), we rejected arguments that the law violated state and federal due process rights by preventing an employee from having compensation commensurate with damages actually sustained, or by abrogating rights of actions for personal injuries under the common law. We stated:
the certain remedy afforded by the Compensation Act is deemed to be a sufficient substitute for the doubtful right accorded by the common law... .
(t)he constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.
Walters, 220 Miss. at 508, 71 So.2d at 441. Similarly, the Accident Contingent Fund, which provided a "certain remedy," may be said to be a sufficient substitute for "the doubtful right"  that is, no right  to recovery from the State under the common law.
Sister jurisdictions have upheld statutory damage limitations challenged on due process grounds. For example, in Jetton v. Jacksonville Electric Authority, 399 So.2d 396 (Fla. Dist. Ct. App. 1981), the Florida court upheld a $50,000 per person, $100,000 per accident limit on tort recovery from the State. The court stated:
we are not prepared to find that the legislature had no rational basis for imposing a $50,000 recovery limit if that limit was considered sufficient to permit full recovery in the vast majority of the cases. Such a limit also permitted governmental units to order their fiscal planning.
Jetton, 399 So.2d at 399. See also Swope v. Northern Illinois Gas Co., 221 Ill. App.3d 241, 163 Ill.Dec. 665, 581 N.E.2d 819 (Ill. App. Ct. 1991) (limit of $100,000 on tort recovery against State not in violation of due process); Estate of Cargill v. City of Rochester, 119 N.H. 661, 406 A.2d 704 (1979) (in suit arising from injury of two boys in explosion and fire in city maintenance shed, $50,000 limit not a denial of state or federal due process rights); Crowe v. John W. Harton Memorial Hospital, 579 S.W.2d 888 (Tenn. Ct. App. 1979) (ordinance limiting damages to $20,000 did not violate constitutional due process requirements in medical malpractice action against community hospital).
In sum, the purpose of the Accident Contingent Fund  to allocate or conserve State fiscal resources  has been held by this Court to be a legitimate legislative goal. Limiting damages available to parties injured at the hands of the State is a rational means of achieving that goal. Therefore, the statutes comported with the due process guarantees of the federal and state constitutions.

IV. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 17, ARTICLE II OF THE MISSISSIPPI CONSTITUTION OF 1890, BY TAKING PRIVATE PROPERTY WITHOUT DUE COMPENSATION, NAMELY, A CHOSE IN ACTION WHICH HAS INURED TO THE BENEFIT OF SAMMY WELLS?
Wells contends that the Accident Contingent Fund violated Section 17, Article III of the Mississippi Constitution of 1890, by "taking private property in the form of a chose in action" which has inured to his benefit, without due compensation. His argument is that having sustained personal injuries due to the negligence of the Panola County school bus driver (imputed to the Panola County Board of Education through the doctrine of respondeat superior), a chose in action has inured to his benefit. He contends that the courts, which protect private *895 property from involuntary takings by the State, should also protect him against "a negligent maiming."
The Board argues generally that the legislature may abolish a common law cause of action, or may limit an established right of action, so long as an appropriate remedy is substituted or there is a rational basis for such action.
Article 3, Section 17 of the Mississippi Constitution provides:
Private property shall not be taken or damaged for public use, except on due compensation first being made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question is whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.
Wells' argument is creative, but not persuasive. This Court's "takings" jurisprudence has concerned the rights of property owners  typically real property owners  to be compensated where the State's action somehow diminishes the value of their property. We have never construed the clause to apply to a cause of action, or a right to sue, as Wells seems to suggest it should be applied.
As discussed above, the legislature may abrogate common law causes of action, and alter or substitute remedies through statutory schemes. Moreover, it may be noted that the legislature may bar recovery entirely, even where a remedy exists, through statutes of repose and statutes of limitations. None of these actions have been held to be a "taking" as that term has been interpreted by this Court.
In sum, Wells' argument that the Accident Contingent Fund worked a "taking" of his property is without merit

V. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY CONSTITUTING INVIDIOUS DISCRIMINATION BETWEEN A FORESEEABLE AND IDENTIFIABLE CLASS OF SCHOOL AGE CHILDREN WHO OF NECESSITY MUST PLACE THEIR LIVES AND SAFETY IN THE HANDS OF BUS DRIVERS EMPLOYED BY ELECTED SCHOOL BOARDS TO TRANSPORT STUDENTS TO AND FROM SCHOOL, AND ALL OTHER VICTIMS OF VEHICULAR ACCIDENTS WHO HAVE A TORT REMEDY UNDER COMMON LAW?
Wells argues that the Accident Contingent Fund statute violated the equal protection clause of the Fourteenth Amendment to the United States Constitution, by discriminating "between a foreseeable and identifiable class of school age children ... and all other victims of vehicular accidents who have a tort remedy under common law." He further argues that under the Accident Contingent Fund statutes, while a severely injured victim of a school bus accident will receive only limited compensation for his or her injuries, those less severely injured, or those using private transportation, may gain full recovery. This legislative classification, Wells contends, is "not rationally related to any remedial purpose of Mississippi statutory or common law, and treats the victims arbitrarily." Wells also contends that the Accident Contingent Fund should be judged by strict, or at least intermediate scrutiny, rather than by a mere rational relation test.
The Board argues that the Accident Contingent Fund "makes no classification"  that is, that any student injured while riding a school bus is subject to the same rules as any other. The Board argues that the Accident Contingent Fund had a rational basis in protecting public coffers from large or numerous damage awards, providing for effective risk management, while affording some measure of relief to the victims of government tortfeasors. The Board contends that strict scrutiny should not be applied to the Accident Contingent Fund because "no fundamental right has been violated."
In Turrentine v. Brookhaven, Miss. School Dist., 794 F. Supp. 620 (S.D.Miss. 1992), the *896 court noted that as with due process challenges, strict scrutiny is only warranted where a statute implicates a suspect class or a fundamental right. Id., 794 F. Supp. at 624. Because the plaintiff challenging the Accident Contingent Fund could show no membership in a suspect class, or interference with a fundamental right, the rational relation test applied. The court stated:
Plaintiff contends that the statutory scheme is unconstitutional because it "makes no distinction between plaintiffs to whom $10,000 would be ample recovery in satisfying a claim, and victims to whom, like Jennifer Turrentine, $10,000 is completely inadequate compensation for her injuries." The Court disagrees. All that must be shown is that a statutory classification, which in this case is technically a failure to recognize a distinction between classes of plaintiffs, is rationally related to a legitimate governmental purpose.
Turrentine, 794 F. Supp. at 625. The court held that the blanket statutory damage limitation applicable to all plaintiffs bore a rational relationship to the protection of State funds.
In Dependents of Nosser v. Natchez Jitney Jungle, Inc., 511 So.2d 141 (Miss. 1987), we held that the Worker's Compensation Act limiting payment to dependents and denying compensation to non-dependent heirs at law had a rational basis and furthered a valid state purpose, and thus was not unconstitutionally discriminatory. Addressing the requirements of the equal protection clause, we cited Dandridge v. Williams, 397 U.S. 471, 481, 90 S.Ct. 1153, 1159, 25 L.Ed.2d 491 (1970):
In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." The problems of government are practical ones and may justify, if they do not require, rough accommodations  illogical, it may be, and unscientific. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
Nosser, 511 So.2d at 143 (quoting Dandridge, 397 U.S. at 485, 90 S.Ct. at 1161 (citations omitted)). The Accident Contingent Fund statutes may fairly be placed in the described "area of economics and social welfare." Therefore, the proper question in Wells' equal protection challenge is whether a statute is reasonably or rationally related to some permissible government purpose. Strict scrutiny, suggested by Wells as proper, is applied only where a fundamental right, or a "suspect class," such as race, is implicated. Parties injured by government tortfeasors, or by any tortfeasors, are not a "suspect class." There is no fundamental right to sue the government for damages. Therefore, a statute limiting damages recoverable from the government is not properly subjected to strict scrutiny on either basis.
In Walters, we held that the Workmen's Compensation Act did not deny equal protection of the laws in excluding firms having fewer than eight workmen. We cited the United States Supreme Court's reasoning that with such classifications, "the legislature, of course, [was] the proper judges to determine precisely where the line should be drawn." Walters, 220 Miss. at 512, 71 So.2d at 443.
One of our sister states has upheld statutory damage limitations challenged on equal protection grounds, and has done so applying a rational relation test. In Jetton, the Florida Appellate Court found no violation of equal protection in a $50,000 recovery limit against the State:
(t)here being a rational relationship between the statutory classifications of tort victims and the object of the legislation. Here the classifications were designed to enable enhanced recoveries in most cases while recognizing that requiring local governments to protect themselves against full liability could impose too heavy a financial burden on local taxpayers.
Jetton, 399 So.2d at 399. See also Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981).
*897 Classifications distinguishing among types of tort victims have been upheld in other jurisdictions, generally applying a rational relation test. In Continental Insurance Company v. Illinois Department of Transportation, 709 F.2d 471 (7th Cir.1983), pursuant to a rational basis test, the court held a statutory limitation of $100,000 on damages recoverable against the State in motor vehicle accidents not to violate equal protection, even though no monetary limit was placed on other types of actions against the State. See also Crowe v. John W. Harton Memorial Hospital, 579 S.W.2d 888 (Tenn. Ct. App. 1979) ($20,000 limit on damages recoverable against governmental tortfeasors had rational basis in protecting tax revenues from unlimited claims); Estate of Cargill v. City of Rochester, 119 N.H. 661, 406 A.2d 704 (1979); Stanhope v. Brown County, 90 Wis.2d 823, 280 N.W.2d 711 (Wis. 1979); Lyles v. City of Philadelphia, 88 Pa.Cmwlth. 509, 490 A.2d 936, app. gr. 509 Pa. 542, 505 A.2d 599 and aff'd 512 Pa. 322, 516 A.2d 701 (Pa. 1985); Imlay v. City of Lake Crystal, 444 N.W.2d 594 (Minn. Ct. App. 1989), aff'd in part and rev'd in part on other grounds, 453 N.W.2d 326 (Minn. 1990); Texas Dept. of Mental Health & Mental Retardation v. Petty, 817 S.W.2d 707 (Tex. Ct. App. 1991).
The Accident Contingent Fund was "economic or social" legislation properly subject to a rational relation test. We have held that protecting the public treasury is a legitimate legislative purpose; limiting damages recoverable from the State for school bus accidents is rationally related to the achievement of that goal. Therefore, the statutes did not violate the equal protection clause of the United States Constitution.

VI. DOES THE MISSISSIPPI ACCIDENT CONTINGENT FUND STATUTE VIOLATE SECTION 31, ARTICLE III OF THE MISSISSIPPI CONSTITUTION OF 1890, AND THE SEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BY PLACING AN ARBITRARY LIMIT ON THE AMOUNT THAT THE TRIER OF FACT CAN AWARD AS COMPENSATORY DAMAGES AND DEPRIVING SAMMY WELLS AND OTHERS SIMILARLY SITUATED OF THEIR CONSTITUTIONALLY GUARANTEED RIGHT OF TRIAL BY JURY?
Wells argues that the Accident Contingent Fund violated Section 31, Article 3 of the Mississippi Constitution of 1890, and the Seventh Amendment to the United States Constitution, by placing an arbitrary limit on the amount that the trier of fact can award as compensatory damages, and by depriving him and others similarly situated of their constitutionally guaranteed right of trial by jury.
The Board argues that since there was not a previously existing right to sue school districts, the Accident Contingent Fund statutes "do not deprive a person of a right he never had." It also argues that where the issues of liability and damages are not in dispute, there is no reason for a jury trial. The Board further argues that in suits under the Accident Contingent fund, disputes concern the apportionment of a given fund. This is, in effect, an interpleader action; such actions are equitable in nature and therefore, within the jurisdiction of a chancery court.
The Seventh Amendment to the United States Constitution provides:
In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.
This Amendment is inapplicable to the case at bar for two reasons: 1) this Court has held that state courts are not controlled by the Seventh Amendment, Gulf & S.I.R.R. v. Hales, 140 Miss. 829, 105 So. 458, 460-61 (1925), and 2) this is not a suit at common law.
Section 31, Article 3 of the Mississippi Constitution provides:
The right of trial by jury shall remain inviolate, but the legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or *898 more jurors may agree on the verdict and return it as the verdict of the jury.
In Walters, we held that the Workmen's Compensation Act did not violate Section 31 of the Mississippi Constitution. We cited with approval an Illinois case upholding the Workmen's Compensation Act:
Our Constitution provides that the right of trial by jury as heretofore enjoyed shall remain inviolate, but it guarantees that right only to those causes of action recognized by law. The act here in question takes away the cause of action on the one hand and the ground of defense on the other and merges both in a statutory indemnity fixed and certain. If the power to do away with the cause of action in any case exists at all in the exercise of the police power of the state, then the right of trial by jury is therefore no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the latter is to leave the former nothing upon which to operate.
Walters, 220 Miss. at 516, 71 So.2d at 445 (quoting Grand Trunk Western Ry. Co. v. Industrial Commission, 291 Ill. 167, 125 N.E. 748 (1919). Referring to our own cases, we continued:
In the case of Aldridge v. Bogue Phalia Drainage District, [106 Miss. 626, 64 So. 377 (1914)] this Court said: "The right of trial by jury guaranteed by Section 31 of our Constitution does not extend to questions in the trial of which a jury is not necessary by the ancient principles of common law." Lewis v. Garrett, 5 How. 434; Isom v. Railroad Co., 36 Miss. 300.
Walters, 220 Miss. at 517, 71 So.2d at 445. The right to jury trial guaranteed by Section 31 applies only to those cases in which a jury trial was necessary at common law. At common law, suits such as Wells' against the State were not available at all, due to sovereign immunity. Therefore, Section 31 does not apply to the purely statutory remedy provided by the Accident Contingent Fund.
While the Seventh Amendment to the United States Constitution does not apply to trials in state courts, a useful analogy is provided by a federal case weighing a Seventh Amendment challenge. In Ducharme v. Merrill-National Laboratories, 574 F.2d 1307 (5th Cir.1978), cert. denied, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1979), an action was brought against the manufacturer of the swine flu vaccine for injuries resulting from an adverse reaction to the vaccine. The Swine Flu Act provided that a cause of action against the United States arising from the administration of the vaccination program was exclusive of any civil action against a program participant. This abrogated a state cause of action against the manufacturer for injuries. The Act provided that no trial by jury was afforded. The court held that there was no Seventh Amendment violation:
Although the 7th Amendment preserves the right to trial by jury of suits at common law, it is settled that suits against the United States, requiring waiver of sovereign immunity, are not "suits at common law" within the meaning of the 7th Amendment. When the sovereign waives immunity it may attach any conditions (including no right to trial by jury) to its consent.
Ducharme, 574 F.2d at 1311.[13] By analogy, suits against the State of Mississippi or a school district are not "suits at common law." As with the federal government, the State must waive sovereign immunity in order to be sued. When the State does waive sovereign immunity, it may attach any conditions to its consent, such as a provision excluding trial by jury.
Wells cites several cases from other jurisdiction in which the courts held that statutory damage limitations deprived plaintiffs of their constitutionally guaranteed rights of trial by jury. See Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711 (1989); Boyd v. Bulala, 647 F. Supp. 781 (W.D.Va. 1986); Kansas Malpractice Victims v. Bell, 243 Kan. 333, 757 P.2d 251 (1988). For example, in Kansas Malpractice Victims, the Kansas Supreme Court found that statutory medical malpractice caps infringed on the jury's responsibility *899 to determine damages, and arbitrarily limited plaintiff's recovery. However, in discussing the basis for the right to trial by jury, the court noted that "trial by jury is guaranteed only in those cases where the right existed at common law." The court stated that "common law allows for the recovery of damages for negligent injury, and therefore the right to jury trial applies here." Id. 757 P.2d at 258. This, of course, serves to distinguish Kansas Malpractice Victims (and the other cases Wells cites in this section) from the one at bar. As discussed above, there was no remedy at common law for injury by a government tortfeasor; that is why no right to a jury trial attached. The reason for requiring a jury trial  that one was required at common law  simply does not apply in the case of the Accident Contingent Fund or the Immunity Act.[14]
In sum, the right to trial by jury under the state constitution is guaranteed only in cases in which, at common law, a jury was required. The causes of action available under the Accident Contingent Fund did not exist at common law; therefore, neither carries a right to a jury trial. The Accident Contingent Fund statutes did not violate Section 31, Article 3 of the Mississippi Constitution.

VII. DID THE LOWER COURT ERR IN DISMISSING THE COUNTERCLAIM OF SAMUEL IRWIN WELLS PURSUANT TO RULE 12(b)(6) OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE AND IN DENYING WELLS' MOTION TO TRANSFER TO THE CIRCUIT COURT?
We assume that the first part of this assignment of error, that "the lower court erred in dismissing the counterclaim of Samuel Irvin Wells pursuant to Rule 12(b)(6)" was addressed by argument under the previous headings. As for the second part of this assignment, that the court erred in denying Wells' motion to transfer to the circuit court, Wells does not provide any argument further than this heading. Counsel has an affirmative duty to provide support for assignments of error. Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992). This Court feels no compunction to address an assignment of error in the absence of such support. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 776 (Miss. 1992); R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990).
However, we assume Wells' argument is that because he was entitled to a jury trial, the case should properly have been transferred to the circuit court. Having found that Wells was not entitled to a jury trial, this assignment of error is without merit.

CONCLUSION
This Court has explicitly stated that control of sovereign immunity is properly the domain of the legislature. Therefore, the legislature's enactment of the Accident Contingent Fund did not violate the Separation of Powers provisions of the Mississippi Constitution. The state constitution's guarantee of "open courts" was not violated by the Accident Contingent Fund or the Immunity Act, because 1) the State was immune at common law, so injured parties are not deprived of any right or remedy, and 2) the "remedy" guaranteed is not limitless or absolute. The Accident Contingent Fund did not violate the due process clauses of the federal and state constitutions, because limiting available damages is rationally related to the legitimate legislative purpose of allocating or conserving scarce fiscal resources. The Accident Contingent Fund did not work a "taking" as this Court has interpreted that provision. The proper level of scrutiny for equal protection challenges to the Accident Contingent Fund was the rational relation test, as the Fund statutes did not implicate a fundamental right or a suspect class. The right to trial by jury is guaranteed only for those actions for which, at common law, a jury was required. The right to proceed against the State, provided in the Accident Contingent Fund, was not available at common law. *900 Therefore, Wells had no right to a jury trial. Because Wells was not entitled to a jury trial, his motion to transfer his case to the circuit court was correctly denied. In sum, the Chancellor correctly upheld the Accident Contingent Fund on all constitutional grounds, federal and state, correctly granted the Panola County Board of Education's 12(b)(6) motion, and correctly denied Wells' motion to remove to the circuit court.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and PITTMAN and SMITH, JJ., concur.
BANKS, J., concurs with separate written opinion joined by PRATHER, P.J.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
BANKS, Justice, concurring:
I concur in the result reached by the majority. I write separately only to note my disagreement with the unnecessarily expansive language in part IV of the opinion. In my view, a cause of action may be subject to the "takings" clause. In the instant case, however, there was no cause of action prior to the statute. If follows that the statute could not have been a "taking." To the extent that the majority opinion means something other than this, I disagree.
PRATHER, P.J., joins this opinion.
McRAE, Justice, dissenting:
While waiting for the bus to take him to school on May 12, 1989, Sammy Wells suffered serious and permanent injuries requiring more than $600,000.00 in medical treatment when two Panola County school buses collided and hit him. Pursuant to the Accident Contingent Fund statutes, Miss. Code Ann. §§ 37-41-39 and 37-41-41 (1972 and Supp. 1993), Sammy may recover only $10,000.00 in damages from the Panola County School Board. The majority rejects Sammy's constitutional challenges to the $10,000.00 limit, affirming the chancellor's dismissal of his claims against the School Board. Therefore, I disagree with the majority's analysis and disposition of the open courts and due process arguments raised herein and respectfully dissent.
Article 3, section 24 of the Mississippi Constitution provides that:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.
The majority first dismisses Sammy's assertion that the $10,000.00 limit on damages abridges his right to seek compensation for the injuries he sustained. It suggests that the constitution does not provide for full redress or compensation, when, to the contrary, section 24 places no limits on an injured party's right to recover. Moreover, section 24 makes no distinction between persons injured by private individuals as distinguished from those acting on behalf of the state or its political subdivisions. The majority further relies on the mistaken premise that because of sovereign immunity, there was no common law basis for recovery against the School Board. Thus, by the majority's way of thinking, the statute provided a remedy for Sammy when he would otherwise have had none. This may have been true in 1953 when the Accident Contingent Fund was initiated. However, in Pruett v. City of Rosedale, 421 So.2d 1046 (1982), we abrogated the court-made doctrine of sovereign immunity effective July 1, 1984. In Presley v. Mississippi State Highway Comm'n, 608 So.2d 1288 (Miss. 1992), we then found that Miss. Code Ann. § 11-46-6, the Sovereign Immunity Act, was unconstitutional because it required that courts apply case law as it existed prior to the Pruett decision and further, because it impermissibly revived that law only by reference, in contravention of article 4, section 61 of the Mississippi Constitution. Presley, 608 So.2d at 1296-1297. Miss. Code Ann. § 11-46-6 (1988), which provided that claims against political subdivisions arising prior October 1, 1989 were governed by pre-Pruett case law, contains the same language we found repugnant to our constitution in Presley. Therefore, Sammy would have had a viable claim against the School District for his May 12, *901 1989 injury even without the "benefit" of the Accident Contingent Fund statutes.[1]
In denying Sammy's plea to apply the strict scrutiny standard on grounds that no suspect class was at issue, the majority artfully ignores the other classification which subjects laws to strict scrutiny, that is, fundamental rights. Pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Mississippi has the power and authority to deem whatever it so desires as a fundamental right. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943) ("The Fourteenth Amendment, as now applied to the states, protects the citizens against the state itself and all of its creatures-boards of education not excepted.")
Mississippi's compulsory school attendance statute requires children to attend any public or nonpublic school from the ages of six to seventeen. Miss. Code Ann. § 37-13-91 (1972). In addition, parents of compulsory-school-age children are required under the statute to send their children to school, and those who do not fulfill their obligations under the statute are subject to being criminally convicted of contributing to the neglect or delinquency of a child. Miss. Code Ann. § 37-13-91(5) (1972).[2] Through the enactment of the compulsory school attendance statute, the Mississippi legislature has declared that the right to education is fundamental. Equally indicative of our commitment to the notion that education is a basic right in Mississippi is this Court's holding that the right to an education is fundamental. As we so aptly articulated in Clinton Municipal Separate School District v. Byrd, 477 So.2d 237 (Miss. 1985):
Our legislature has declared as part of the public policy of this state the provision of "quality education for all school age children in the state", Miss. Code Ann. § 37-1-2(f) (Supp. 1984), this out of recognition of the effect of education "upon the social, cultural and economic enhancement of the people of Mississippi." Miss. Code Ann. § 37-1-2 (Supp. 1984). Thus while there may be no federally created fundamental right to education, as the school board argues, relying upon San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 29-39, 93 S.Ct. 1278, 1294-1300, 36 L.Ed.2d 16, 40-47 (1973), the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental. As such this right, to the extent our law vests it in the young citizens of this state, enjoys the full substantive and procedural protections of the due process clause of the Constitution of the State of Mississippi, whatever construction may be given the Constitution of the United States.
Id. at 240 (emphasis added). See also Mitchell v. Board of Trustees of Oxford Municipal *902 Separate School District, 625 F.2d 660, 664 (5th Cir.1980) (school board obligated to educate children); Burnside v. Byars, 363 F.2d 744, 748 (5th Cir.1966) (compelling state interest in education; state has duty to further and protect public school system).
When a fundamental right has been established, the statute or action which limits that right is evaluated under the strict scrutiny standard; that is, the state action must be necessary to protect a compelling governmental interest. Also included in the strict scrutiny review is the premise that there must exist no less restrictive means to achieve the state interest. While the state has an interest in protecting its finances and that of the school districts, less restrictive means than a $10,000.00 per person damage cap are certainly available.
The majority also rejects Sammy's argument that the Accident Contingent Fund statutes violate due process by creating an arbitrary limit on damages recoverable by individuals injured in accidents involving school buses. It takes comfort in its finding that statutory damage caps in numerous other jurisdictions have withstood constitutional challenges because a rational relation was found to exist between the law and some legitimate legislative purpose. In this case, it was found to be the "conservation of scarce financial resources." Op. at 893. However, in those cases cited by the majority, the damage caps upheld bear a more realistic relation to the potential injuries which may be sustained than the $10,000.00 per individual, $50,000.00 per accident limit imposed by Miss. Code Ann. § 37-41-41. See, e.g., Texas Department of Mental Health & Mental Retardation v. Petty, 817 S.W.2d 707 (Tex. App. 1991) ($250,000 limit on damages in suits against the state); Swope v. Northern Illinois Gas Co., 221 Ill. App.3d 241, 163 Ill.Dec. 665, 581 N.E.2d 819 (Ill. App.3d 1991) ($100,000 limit on tort recovery against the state); Lyles v. City of Philadelphia, 88 Pa.Commw. 509, 490 A.2d 936 (1985), aff'd 512 Pa. 322, 516 A.2d 701 (1986) ($250,000 statutory cap for damages under Sovereign Immunity Act); Sibley v. Board of Supervisors of Louisiana, 462 So.2d 149 (La. 1985) ($500,000 statutory limit on malpractice liability for state services); Jetton v. Jacksonville Electric Authority, 399 So.2d 396 (Fla.App. 1981) (statutory limit of $50,000 per person, $100,000 per accident for recovery against the state in tort actions). The majority, in particular, cites Jetton for the proposition that "we are not prepared to find that the legislature had no rational basis for imposing a $50,000 recovery limit if that limit was sufficient to permit full recovery in the vast majority of the cases." Op. at 894, quoting Jetton, 399 So.2d at 399. Whether $10,000.00 per person and $50,000.00 per accident reasonably could have been expected to fully compensate most injuries caused by school buses in the 1980's is not at issue. However, the point is that such an unrealistically low limit does not serve to protect the public coffers. Unless Sammy's parents are extremely wealthy or well-insured, the cost of his injury to the taxpayers far exceeds the Accident Contingent Fund's $10,000.00 liability. Indeed, it is the taxpayers who ultimately shoulder the burden of undercompensated injuries such as Sammy's through higher medical and insurance costs, increased taxes to provide the necessary medical, social and educational services and reduced revenues from the income lost by injured parties and their caretakers. Thus, the District Court's rationale in Turrentine v. Brookhaven, Mississippi School District, 794 F. Supp. 620 (1992), upon which the majority relies, that "[u]nlimited damage awards against school districts could deprive the State of Mississippi of funds that could otherwise be used for other state programs" is misguided. Turrentine, 794 F. Supp. at 625.
The reasonableness of a $10,000.00 per person statutory damages cap further loses force when considered in light of Miss. Code Ann. 37-11-53(4), which provides that a school district may collect up to $20,000.00 in damages and court costs from parents of children who maliciously damage school property. Paradoxically, the school district may collect more from a parent for damaged property than a parent may collect from the school district for personal injury to his child caused by a school bus or other district-owned vehicle. Can the legislature possibly have placed a higher value on school property than on the lives of public school children *903 and others vulnerable to injury by vehicles owned or operated by school districts?
Section 24 of the Mississippi Constitution places no damage limit upon the right to seek redress in our courts. It makes no distinction between those who have been injured by private individuals or entities and those whose injuries have been caused by employees of the state or its political subdivisions. Education is a fundamental right and thus the Accident Contingent Fund statute is subject to strict scrutiny. Even applying the less stringent rational relation standard, where a damage limit is set at such an unreasonably low level as to cover only the most minor injuries, it cannot truly be said to have a rational relation to the state's protection of its own coffers. Applying either standard, the statute guarantees that the burden of injuries like those sustained by Sammy Wells will be carried by the taxpayers. We require our children to attend school until they reach the age of seventeen. We have a responsibility, therefore, to make sure that those children are protected and compensated when injured in pursuit of their education. Applying either the strict scrutiny or rational basis standard, I would find the damage limit set forth in the Accident Contingent Fund to be unconstitutional. Accordingly, I dissent.
SULLIVAN, J., joins this opinion.
NOTES
[1] Miss. Code Ann. §§ 37-41-39 and 37-41-41 (Supp. 1992) carried a repeal date of October 1, 1993.
[2] Miss. Code Ann. § 37-41-37 (Supp. 1992) provides in part:

In the event of any accident resulting in the death of or injury to any person or in damage to property (a) arising out of the negligent operation of any school bus or other vehicle owned by any school district, public junior college district or state agency, or operated by such school district, public junior college district or state agency by private contract, for the transportation of pupils to and from the public schools of such school district, junior college or state agency, or (b) caused by a bus while being operated in pursuance of any activity of any of such schools, or (c) arising by reason of negligence in the maintenance, upkeep, repair or mechanical failure of such vehicle, any person receiving such injuries or sustaining such damages shall have a right of action against the school district, junior college district or state agency which operates such vehicle. Such school district, junior college district, or state agency may not plead the defense of governmental immunity in bar to any such action or recovery, and such suit may be tried as any other civil action.
Miss. Code Ann. § 37-41-39 (Supp. 1992) provides in part:
Each school district, public junior college district or state agency operating vehicles for transportation of children shall annually contribute to a fund in the State Treasury to be known as the "Accident Contingent Fund" on the basis of not to exceed Thirty Dollars ($30.00) for each school bus or other vehicle used by such school district, public junior college district or state agency, for the transportation of children to and from the public schools, junior colleges or state agencies, or used for any activity of such schools, ...
[3] Miss. Code Ann. § 37-41-41 (Supp. 1992) provides in part:

Compensation on any claim shall be disbursed to such school district, junior college or state agency from the Accident Contingent Fund to cover any accident arising as provided in Section 37-41-37, ... No claim shall be paid from any fund other than the Accident Contingent Fund.
No claim arising from such accident shall exceed the total amount of Ten Thousand Dollars ($10,000) exclusive of court costs for any one (1) person sustaining such injuries or damages, and no more than Fifty Thousand Dollars ($50,000) shall be paid in any one (1) accident. When it appears that claims in more than the amount of Fifty Thousand Dollars ($50,000) will be made because of one (1) accident, the chancellor ... shall prorate said claims as in his opinion are just and equitable.
No claim for property damage shall be paid in excess of One Thousand Dollars ($1,000) per claimant per accident... .
[4] See Palmer, The History and Future of Sovereign Immunity for Mississippi School Districts, 58 Miss.L.J. 275, 281 (Fall 1988).
[5] Since 1973, school districts were authorized under Miss. Code Ann. § 37-7-304 to purchase liability insurance on any vehicle they operated and to purchase excess liability insurance on school buses (or other vehicles used to transport students covered by Miss. Code Ann. § 37-41-37). Immunity from suit was waived to the extent of the liability insurance carried. Miss. Code Ann. § 37-7-304 also carried a repeal date of October 1, 1993.
[6] The court also held that the law did not violate separation of powers, due process, equal protection, and the right to trial by jury.
[7] "The statute under consideration sets aside one body of rules only to establish another system in its place. If the employee is no longer able to recover as much as before in case of being injured through the employer's negligence, he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy ..." Walters, 220 Miss. at 510, 71 So.2d at 442.
[8] See 43 A.L.R.4th 19, § 5.
[9] The court did find that the statute violated equal protection because there was no rational basis for imposing a liability limit of $1000 in damages for defective sidewalks in New Britain but not in the rest of the state.
[10] Mississippi's open courts provision have been similarly construed. See Miles v. Board of Supervisors of Scott County, 33 So.2d 810 (1948).
[11] Article 1, Section 21 of the Florida Constitution.
[12] In Turrentine, the court held that the Accident Contingent Fund statutes "bear a rational relation to the alleged objective, the protection of tax revenues, proffered by Defendant School District." 794 F. Supp. at 625.
[13] The Court also found that the Act did not violate due process or equal protection rights; the exclusive nature of the remedy under the Act was rationally related to achieving the legitimate goal of assuring interstate distribution of the vaccine.
[14] The cases cited by Wells may also be distinguished on the grounds that none involved recovery from a government tortfeasor. As discussed above, there are sound reasons for distinguishing the relationship between a plaintiff and a government tortfeasor from the relationship between a plaintiff and a private tortfeasor. See Estate of Cargill v. City of Rochester, 119 N.H. 661, 406 A.2d 704 (1979), and Opinion of the Justices, 126 N.H. 554, 493 A.2d 1182 (1985).
[1] Further, Chapter 442, Laws of 1988 provided, in relevant part, as follows:

SECTION 15. Section 37-7-304, Mississippi Code of 1972, is amended as follows:
37-7-304. (a) The school board of any district may obtain liability insurance on any vehicle operated by the district, except that excess coverage only may be purchased under authority of this section for school buses and other vehicles covered by the provisions of Sections 37-41-37 through 37-41-41, with such coverage limits as are desired by the board including medical benefits and uninsured motorist coverage if desired. The school district may be used by anyone affected by the operation of said vehicles, to the extent of such insurance carried, and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance... .
The policy of insurance shall contain a provision to the effect that the insurance company shall make no plea of the sovereign immunity doctrine.
(b) The costs of such insurance shall be paid out of the school district's general maintenance fund.
1988 Miss. Laws 442, § 15 (emphasis added). Had the accident involved a vehicle owned by a school district which had elected to obtain liability insurance, Sammy would have been able to bring suit against the district regardless of the Sovereign Immunity Act. See Rodgers v. Pascagoula Public School District, 611 So.2d 942 (Miss. 1992) (following 1987 accident involving school bus, plaintiff awarded $11,765.50 jury verdict which was doubled by this Court since award was only in amount of medical expenses without regard for pain and suffering).
[2] § 37-13-91(5) provides that parents are subject to punishment pursuant to § 97-5-39(1), which imposes a fine of up $1,000.00 and/or imprisonment not to exceed one year for willfully contributing to the delinquency or neglect of a child.