# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00937-SCT

*STATE OF MISSISSIPPI, THE JACKSON PUBLIC
SCHOOL DISTRICT AND HINDS COUNTY
AGRICULTURE HIGH SCHOOL DISTRICT*

*v.*

*BERGIE JONES, DORIS POWE, MARY BARRY, JOHN
ANTHONY, MARY HUNTER AND CATHERINE
KNIGHT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/96 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | W. DAVID WATKINS |
| | PAMELA W. DILL |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RICKEY T. MOORE |
| ATTORNEYS FOR APPELLEES: | JOHN L. MAXEY, II |
| | JOHN F. HAWKINS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 7/2/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/3/98 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. This suit arises from the interpretation of Miss. Code Ann. § 37-7-307, the statute pertaining, in part, to lump-sum payment of accrued leave for retiring public school teachers. Prior to 1994, there was no statutory provision for such payment. However, in 1994, the Legislature amended § 37-7-307 to provide for the payment of accumulated leave exceeding the maximum amount that may be credited for retirement purposes to retiring certificated[1] teachers at the rate paid to substitute

teachers by the last school district in which the teacher was employed.

¶2. In 1995, the Legislature again amended Miss. Code Ann. § 37-7-307 to allow the retiring teacher to opt to receive payment for all unused accumulated leave at the substitute-teacher rate. In 1996, Miss. Code Ann. § 37-7-307 was amended to allow retiring certificated teachers to receive payment for a maximum of thirty days of unused leave at the substitute-teacher rate. The amendment also restricted payment to leave accumulated in the last school district in which the certificated teacher was employed. The 1996 amendment was scheduled to become effective July 1, 1996.

¶3. The appellees (a group of public school teachers) sought declaratory judgment in the First Judicial District of the Hinds County Chancery Court. Specifically, the teachers requested that the 1995 and 1996 amendments to the statute be declared unconstitutional, and that the State be enjoined from acting under these amendments. The teachers also sought a declaration that they were entitled to payment at the regular rate for all accumulated leave, regardless of the School District in which the leave accumulated.

¶4. After hearing the parties' arguments, the chancellor ruled that the statutory amendments lacked a rational basis and were unconstitutional, insofar as they applied to teachers who were hired prior to July 1, 1996. She ordered the State to pay retired teachers at their regular rate of pay for all days of accrued leave, regardless of the School District in which the leave accumulated. The State appealed, and this Court stayed the order of the trial judge, pending the appeal.

¶5. The State raises the following issues for consideration by this Court:

**A. Whether the chancellor erred in holding that the statute violates the Constitution?**

**B. Whether the chancellor erred in rewriting the statute?**

¶6. On cross-appeal, the teachers raise the following issue:

**C. Whether the chancellor erred in not fashioning the complete relief to which the appellees are entitled?**

¶7. This Court finds that the appellees have failed to meet their heavy burden of proving that the statutory enactments were not rationally related to a legitimate government interest. Furthermore, the Legislature is the appropriate entity to determine the question of lump-sum payment for leave accumulated by retiring teachers. For this reason, the judgment of the trial court is reversed and rendered in favor of the State of Mississippi.

## II. LEGAL ANALYSIS

**A. Whether the chancellor erred in holding that the statute violates the Constitution?**

**B. Whether the chancellor erred in rewriting the statute?**

¶8. The State contends that the chancellor erred in declaring unconstitutional the amendments to Miss. Code Ann. § 37-7-307. The State further contends that the chancellor's ruling, in effect, rewrote the statute.

¶9. The standard for reviewing the constitutionality of a statute is well-settled: "This Court will strike down a statute on constitutional grounds only where it appears **beyond all reasonable doubt** that such statute violates the Constitution." *Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883, 888 (Miss. 1994) (emphasis added). *See also Mississippi Comm'n on Judicial Performance v. Russell*, 691 So. 2d 929, 942 (Miss. 1997) ( "When a statute can be interpreted either as constitutional or unconstitutional, we have long held that we adopt the constitutional construction. . . . If possible, we will construe it so as 'to enable it to withstand the constitutional attack and to carry out the purpose embedded in the [statute].'"). Indeed,

> the legislative enactment is cloaked with a presumption of constitutionality, and in order to rebut this presumption the unconstitutionality must appear beyond reasonable doubt. *Mississippi Power Co. v. Goudy*, 459 So.2d 257, 263 (Miss.1984). It is not this Court's duty to look for factual possibilities or scenarios that would create conflict with the statute, thereby rendering the statute unconstitutional. Rather, this Court's duty is to interpret the Act and envision facts and scenarios in which the statute could be held constitutional.
>
> *  *  *
>
> [I]n *Aikerson v. State*, 274 So.2d 124 (Miss.1973), this Court said:
>
>> It is a general rule in construing statutes this Court will not only interpret the words used, but will consider the purpose and policy which the legislature had in view of enacting the law. The court will then give effect to the intent of the legislature. *State Highway Commission v. Coahoma County*, 203 Miss. 629, 32 So.2d 555, 37 So.2d 287 (1947).

*Secretary of State v. Wiesenberg*, 633 So. 2d 983, 989-90 (Miss. 1994).

¶10. Thus, the teachers in this case have a "very heavy burden" in contesting the constitutionality of a statute. *Moore v. Board of Supervisors of Hinds County*, 658 So. 2d 883, 887 (Miss. 1995). The sole constitutional theory advanced in this case is that the statutory amendments violated the substantive due process rights of the teachers/appellees.

> The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deprive any person of life liberty, or property, without due process of law...." In *Turrentine v. Brookhaven, Miss. School Dist.*, 794 F.Supp. 620 (S.D.Miss.1992), the court noted that in determining whether a statute violates the due process clause, it must first be determined which standard of review applies. A statute implicating a "suspect class," such as race, or interfering with the exercise of a fundamental right, such as voting, is subject to strict scrutiny. Absent a suspect class or a fundamental right, a reviewing court will apply a less stringent standard of review, the "rational relation" test. *Id.* at 624. The United States Supreme Court has stated:
>
>> If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due

process are satisfied.

> *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934); *See also Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 84-85, 100 S.Ct. 2035, 2042-2043, 64 L.Ed.2d 741 (1980).

> Section 14 of Article 3 of the Mississippi Constitution provides that "(n)o person shall be deprived of life, liberty, or property except by due process of law." We have stated:

>> When applied to substantive rights [the due process clause] is now interpreted to mean that the government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power.

> *Albritton v. City of Winona*, 181 Miss. 75, 97, 178 So. 799, 804 (1938).

*Wells*, 645 So. 2d at 893.

¶11. Neither party asserts that teachers are a suspect class. Furthermore, the right to lump-sum payment for accumulated leave upon retirement is not guaranteed in the federal or State Constitutions. The only testimony in this case was that of the teachers, each of whom claimed that they "expected" to be compensated for all their accumulated leave days at their regular rate of pay. However, all of these teachers began teaching long before the lump-sum payment for accumulated leave was even contemplated by the statute. Furthermore, there was no evidence that this "expectation" was part of the teachers' contracts. The types of "expectations" to which the teachers testified were discredited by the United States Supreme Court long ago, in the case of *Pennie v. Reis*, 132 U.S. 464 (1889).

¶12. In *Pennie*, the Court held that a police officer's estate had no vested right to insurance benefits, when he died after a death benefit statute was repealed:

> The direction of the State, that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority.

*Id.* at 471. *See also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (in the context of procedural due process, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are

not created by the Constitution. Rather they . . . stem from an independent source such as state law. . ."); ***Dodge v. Board of Educ. of Chicago***, 302 U.S. 74 (1937) (holding that retired school teacher was not entitled to retirement annuity of $1,500.00, when statutory amendment decreased annuity to $500.00).

¶13. Therefore, because this case does not involve a suspect class or a fundamental right, "[u]nder both federal and state due process clauses, it must be shown that the [statute] was rationally or reasonably related to a proper legislative purpose." ***Wells***, 645 So. 2d at 893; ***Mississippi High School Activities Ass'n, Inc. v. Coleman***, 631 So. 2d 768, 774 (Miss. 1994) ("When no fundamental right is infringed by state action, yet a substantive due process challenge is lodged, the statute (or rule) will be upheld so long as it has a reasonable relation to the State's legitimate purpose.").

¶14. The chancellor found that the State had no rational basis for limiting the lump-sum payments to the substitute-teacher rate of pay for thirty days of accumulated leave from the last School District in which the retired teacher was employed. The State asserts that financial "chaos" in local School Districts would be avoided by limiting the lump-sum payment to thirty days accumulated in the last School District in which the teacher was employed. Certainly, the government has a legitimate interest in ensuring the solvency of its School Districts.

¶15. Moreover, (although the chancellor ruled that "[t]here is no rational basis for paying them now as substitute teachers, when they served the State as full teachers") the rationale for limiting the payment to the substitute-teacher rate of pay is equally apparent. The State asserts that the substitute-teacher pay is what the School District would have been responsible for paying, had the teacher chosen to take a leave day (as opposed to allowing it to accumulate). That is, if the teacher took leave, the District paid his or her regular rate of pay and paid a substitute teacher. If the teacher did not take the leave day, the District paid his or her regular rate of pay. Either way, the teacher has already received the regular pay for the days he or she was employed by the School District. Therefore, the substitute-teacher wages for the accumulated days represent what the School District saved when a teacher exhibited dedication and a strong work ethic. Clearly, the statute has a rational relation to a legitimate legislative purpose.

> Although [the trial court's] decision was couched in terms of the arbitrariness of the challenged provisions, we fear that **the court below did no more than substitute its policy judgment for that of [the Legislature].** Social and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights must be upheld . . . when the legislative means are rationally related to a legitimate governmental purpose. **Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.**

***Hodel v. Indiana***, 452 U.S. 314, 331-32 (1981) (citations omitted) (emphasis added).

¶16. This Court has consistently "found the conservation of scarce financial resources by school systems to be a proper legislative purpose." ***Wells***, 645 So. 2d at 894 (citing ***Adams v. Petal Municipal Separate School Systems***, 487 So.2d 1329, 1330 (Miss.1986)). This Court has also recognized the importance of allowing "governmental units to order their fiscal planning." ***Wells***, 645 So. 2d at 894 (quoting ***Jetton v. Jacksonville Electric Authority***, 399 So. 2d 396, 399 (Fla. Dist. Ct.

App. 1981)). "In sum, . . . to allocate or conserve State fiscal resources -- has been held by this Court to be a legitimate legislative goal." *Id.*

¶17. Education, particularly in smaller, poorer School Districts would suffer if the School Districts were to be held responsible for large, lump-sum payments like those ordered by the chancellor. Furthermore, the broad lump-sum payments dictated by the chancellor were **never** contemplated by the Legislature in any of its statutory enactments. The Legislature is the appropriate entity for balancing the importance of fiscal responsibility against the importance of properly rewarding retiring teachers for their years of service.

> The Legislature is the appropriate branch of the government to deal with this matter because it can conduct hearings to determine the extent of the need, the amount of funds required, and the numerous related factors involved. While the legislature can view the full spectrum of the problem, the courts, which do not have the means or facilities to adequately study the problem or provide the remedy, can only deal with the problem on a case by case basis.

*Mississippi Municipal Ass'n, Inc. v. State*, 390 So. 2d 986, 988 (Miss. 1980) (citations omitted). For these reasons, the State's argument has merit, and the judgement of the trial court is reversed and rendered.

**C. Whether the chancellor erred in not fashioning the complete relief to which the appellees are entitled?**

¶18. On cross-appeal, the teachers assert that the chancellor should not have limited her order to those teachers hired prior to July 1, 1996. As previously stated, however, the statutory enactments are constitutional. Therefore, the cross-appeal need not be addressed.

### III. <u>CONCLUSION</u>

¶19. From the philosophical standpoint, it is easy to see why the chancellor ruled that "the teachers have earned their keep." Teachers are charged with enlightening and inspiring the young people of our State. In large part, the future of our society rests on the shoulders of these very special men and women. In this sense, the teachers have earned more than our citizenry can possibly repay.

¶20. Nevertheless, from a constitutional standpoint, the public school teachers have earned what the Mississippi Legislature dictates they have earned. The Legislature is the entity charged with balancing the many competing philosophies with regard to the expenditure of State funds.

¶21. The 1994, 1995, and 1996 enactments of Miss. Code Ann. § 37-7-307 pertaining to lump-sum payment of accumulated leave for retiring teachers are constitutional. That is, the amendments are rationally related to the legitimate purpose of fiscal planning and responsibility. For this reason, the ruling of the chancellor in this case must be reversed and rendered in favor of the State of Mississippi.

¶22. **REVERSED AND RENDERED.**

**BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. ROBERTS, J., JOINS IN**

**PART. PITTMAN, P.J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶23. Teachers have a protected property interest in their earned, accumulated leave which constitutes wages earned for services rendered. In this case, the teachers' retirement plan prior to 1994 allowed teachers--state employees--to receive one lump sum payment for accumulated leave upon retirement, at the daily rate at which those teachers were paid normally. Now the Legislature has enacted new versions of Miss. Code Ann. §  37-7-307(5) which effectively deprive the teachers of these contractually guaranteed leave payments. Because this deprivation amounts to a denial of substantive due process and violates the constitutional prohibitions against ex post facto laws and laws impairing contractual obligations, I dissent.

¶24. A showing that the State of Mississippi has deprived teachers of a protected interest in life, liberty or property is a prerequisite to their claims alleging denial of their rights to due process. *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986). To have a property interest in a benefit, a person must have more than an abstract need or desire for it; that person must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In Mississippi, there is no difference between earned sick pay and earned vacation pay; both are earned and neither are compensation in lieu of wages. *Lanterman v. Roadway Express, Inc.*, 608 So. 2d 1340, 1349 (Miss. 1992).

¶25. The language of the prior version of Miss. Code Ann. § 37-7-307 created an expectation that certificated teachers in Mississippi would receive all accrued leave payments at the daily rate of employment. These entitlements to payment for accrued leave upon retirement were contractual rights that could not be altered by the Legislature without offending the Due Process Clause of the Mississippi Constitution. These teachers had a contractual relationship with the State of Mississippi, and these contractual rights are property interests pursuant to the Due Process Clause. The rights are certainly more than a unilateral expectation. Even without a determination that there was not a contractual relationship, it is still clear that the plaintiffs here have a property interest in their vested accrued leave payments.

¶26. The appellees' reasonable expectation of receiving this contractual obligation is a sufficient allegation of a tangible interest to invoke protection against arbitrary and irrational government action. There is no legitimate purpose for denying these people the right to what they have earned over the course of their employment by the State. These teachers worked under a contractual situation, with the complete understanding that they would be compensated not as substitute employees, but as full time employees. Unfortunately, the Legislature ignored their legitimate expectations, reneging on the State's earlier promises, on which these teachers relied.

¶27. The majority reasons that the Legislature's actions do not violate due process because they are rationally related to further a legitimate government interest, namely to avoid "financial chaos" and to ensure the solvency of statewide school districts. However, there is nothing to support the argument by the State that future retirement benefits eventually would equal those that these teachers were

entitled to receive in the form of lump-sum payments of accrued leave. The chancellor below was correct in finding that the teachers were deprived of a significant property interest.

¶28. Additionally, the Legislature's decision to amend Miss. Code Ann. 37-7-305(5) impairs a contractual obligation to these teachers and, in effect, imposes an ex post facto law. These teachers entered into a contract with the State of Mississippi with the understanding that upon retirement, they would be entitled to receive payment for accrued, unused leave time. By changing the law, the Legislature affected the contracts of teachers employed by the State. Those teachers employed after the effective date of the law, depending on whether they were hired in 1994, 1995, or 1996, would be entitled to receive their leave payments upon retirement at the reduced rates under their new contracts. These teachers were on notice that the contractual terms would be changed. However, those teachers employed prior to the initial reduction are entitled to receive payment in accordance with *their* contracts of employment, which would give them one lump sum payment for accumulated leave upon retirement, at the daily rate at which those teachers were paid normally. The State is constitutionally bound to those contracts, because the Legislature cannot pass laws which impair the obligation of contracts. Miss. Const. art. 3, § 16. The majority seems to ignore this obligation, however, by allowing the State to cap the number of compensable days at a maximum of thirty. Further, by upholding the amendments, the majority upholds ex post facto laws, which are also constitutionally prohibited. Miss. Const. art. 3, § 16 ("Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed"). These amendments clearly have a retroactive effect. Even teachers who were employed by the State prior to the effective dates of the relevant amendments may be subject to receiving less compensation for their vested, unused leave than they expected when they were hired. The majority has given the State a license to ignore its contractual obligations to those persons recognized by the majority as guarantors of the future of our society. Is this the kind of respect that our public school teachers should expect from this Court?

¶29. For these reasons, I dissent. As to the direct appeal, I would affirm, finding that the statute under review violates the constitutional guarantee of substantive due process and violates the constitutional prohibition against the passing of ex post facto laws and laws impairing the obligation of contracts.

**SULLIVAN, P.J., JOINS THIS OPINION. ROBERTS, J., JOINS IN PART.**

1. Miss. Code Ann. § 37-7-307 (1) (1996) defines a certificated employee as "any employee of a public school district required to hold a valid certificate by the Commission on Teacher and Administrator Education, Certification and Development."