# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CP-00247-SCT

*W. O. "CHET" DILLARD AND OTHERS IN LIKE*
*OR SIMILAR CIRCUMSTANCES*
*v.*
*GOVERNOR RONNIE MUSGROVE,*
*LIEUTENANT GOVERNOR AMY TUCK, HOUSE*
*SPEAKER TIM FORD, AND THE PUBLIC*
*EMPLOYEES RETIREMENT SYSTEM OF THE*
*STATE OF MISSISSIPPI IN THEIR OFFICIAL*
*CAPACITY AND NOT INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/18/2001 |
| TRIAL JUDGE: | HON. LAWRENCE J. FRANCK |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | PRO SE |
| | E. MICHAEL MARKS |
| ATTORNEYS FOR APPELLEES: | ROGER GOOGE |
| | DAVID B. MILLER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 02/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

W. O. "Chet" Dillard filed a complaint in Hinds County Chancery Court alleging that

the Supplemental Legislative Retirement Plan ("SLRP") violates his equal protection rights

guaranteed under the Fourteenth Amendment of the U.S. Constitution since legislators and

the Lieutenant Governor receive retirement benefits under both the Public Employees'

Retirement System ("PERS") and SLRP while other state employees only receive benefits

under PERS. The chancery court denied Dillard's motion for summary judgment and granted the M.R.C.P. 12(b) motion to dismiss filed by Governor Ronnie Musgrove, Lieutenant Governor Amy Tuck, House Speaker Ford, and PERS ("defendants").

On appeal Dillard argues that the trial court erroneously treated the defendants' motion to dismiss as a motion for summary judgment and reasserts his argument that SLRP violates his equal protection rights. He also challenges only legislators being allowed to include expenses in "earned compensation" to be attributed toward retirement. Further, he asserts that PERS is not a state agency, that it is improper for liaison members of the Legislature to meet with the Board of Trustees of PERS for the benefit of the Legislature, and that the Lieutenant Governor cannot simultaneously be a member of the executive and legislative branches of the state government.

We affirm the judgment of the chancery court.

## FACTS

Dillard has served Mississippi in several capacities over the years[1] and is now receiving state employee retirement benefits under PERS, Miss. Code Ann. §§ 25-11-1 to 25-11-145 (Rev. 1999 & Supp. 2002). SLRP was enacted in 1989 to give legislators, as well as the Lieutenant Governor, retirement benefits in addition to those they receive under PERS. Miss. Code Ann. §§ 25-11-301 to 25-11-3109 (Rev. 1999 & Supp. 2002). Other state employees, including the Governor, draw from only one retirement system. The State contributions to retirement, which are a percentage of each member's compensation that the

---

[1]Dillard has served as a Chancellor, the Commissioner of Public Safety, a District Attorney, an Assistant Attorney General, and as a member of the military.

2

State pays to the Board of Trustees of PERS, are higher under SLRP than under PERS. Also, "all remuneration or amounts paid, except mileage allowance" are included as compensation under SLRP, but not under PERS. Compare *Id.* § 25-11-307(1) with *Id.* § 25-11-103. Further, SLRP allows legislators and the Lieutenant Governor to receive up to 100% of what they receive under PERS. *Id.* § 25-11-309.

During the 2000 Regular Session, the Legislature amended SLRP to substantially increase participant and State contribution percentages to SLRP.[2] After much public criticism, Governor Musgrove called the Legislature into extraordinary session wherein the increased contribution percentages were repealed.[3] Before the enactments to SLRP were repealed, Dillard filed a complaint in the Chancery Court of the First Judicial District of Hinds County against defendants seeking declaratory and injunctive relief alleging that SLRP violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.

The defendants filed a M.R.C.P. 12(b) motion to dismiss asserting, among other grounds, that Dillard's prayer for relief was mooted by the intervening repeal of portions of Miss. Code Ann. §§ 25-11-307 & -309, that he failed to state an equal protection violation, and that he failed to state a claim under Article 4, § 46 of the Mississippi Constitution.

---

[2] Member contributions were increased from 3 % to 6 %. The State was to pay an amount equal to member contributions termed "normal contributions", i.e. match the 6%, in addition to an "accrued liability contribution." The accrued liability contribution was increased from 6 1/3 % to 17.09% through the 2000 amendments. See Miss. Code Ann. § 25-11-307 (Supp. 2002) Amendment Notes.

[3] Normal contribution percentages were returned to 3%, and the accrued liability contribution was returned to 6 1/3 %. See *id.*

Dillard subsequently filed a motion for summary judgment supported by his affidavit. The court granted defendants' motion to strike certain portions of Dillard's affidavit. As the case proceeded, all parties agreed there were no genuine issues of material fact and the issues presented were entirely legal issues. After oral arguments on the motions, the special chancellor, appointed by this Court, issued an opinion and final judgment denying Dillard's motion for summary judgment and granting the motion to dismiss on the merits.

Dillard timely appealed to this Court and later sought recusal of all Justices who previously served in the Legislature as well as consolidation with another case before us at the time, *Public Employees' Retirement System v. Hawkins*, 781 So. 2d 899 (Miss. 2001), wherein all Justices had recused themselves. We denied consolidation and discretionary recusal and now address the issues raised in his appeal here. Even though the contribution percentages of the amendments to SLRP were repealed, the broader challenge that SLRP violates the equal protection clause is still at issue.

## DISCUSSION

This is a case of first impression for this Court. The issue is whether a specified portion of a branch of state government and select groups of another branch can supplement over and above the general retirement system. The Legislature has carved out an exception for Mississippi Highway Safety Patrol officers to have a separate retirement system with more benefits. See Miss. Code Ann. §§ 25-13-1 to -33 (Rev. 1999 & Supp. 2002). The Fifth Circuit upheld that statute as constitutional and noted that the legislative purpose of the statute was attributed to the dangerous nature of a patrolman's job. *See Anderson v. Winter*, 631 F.2d 1238, 1240 ( 5th Cir. 1980).

4

When providing varying benefits to different classes of employees the only requirement is to "look to see whether the distinction has a rational relationship to a legitimate state interest." *Jackson Firefighters Ass'n Local 87 v. City of Jackson*, 736 F.2d 209, 213 (5th Cir. 1984). Further, "[a] legislative enactment is cloaked with a presumption of constitutionality, and in order to rebut this presumption the unconstitutionality must appear beyond reasonable doubt." *State v. Jones*, 726 So. 2d 572, 574 (Miss. 1998) (citation omitted). Since the SLRP statute does not interfere with a fundamental right and does not create a suspect class, it violates the equal protection clause only if we find that the statute is not "rationally or reasonably related to a proper legislative purpose." *Id.* at 574.

The U.S. Supreme Court has spoken on this matter:

> equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*FCC v. Beach Communications, Inc*., 508 U.S. 307, 313, 221; 113 S. Ct. 2096, 124 L.Ed. 2d 211 (1993).

As articulated by the defendants, the rational bases for the enactment of SLRP are (1) the inherent uncertainty in holding a legislative office, (2) the hours during which the legislators are on call to their constituents; (3) the time taken away from other gainful employment or business enterprise; and (4) the need to attract capable, qualified persons to these elected positions. These reasons are certainly plausible, and there was clearly a reasonable basis for the Legislature to create SLRP and a rational relationship between its provisions and legitimate State interests. Clearly, absence from other gainful employment

5

for, at times, an indefinite period of time would potentially put a terrible strain on that business. The uncertainty in serving in the Legislature is a legitimate concern. Additionally, the need to attract capable, qualified people to these four-year elective positions is certainly needed incentive. While the factors listed might be different from a patrolman, nonetheless, they are legitimate, reasonable, and plausible. Thus judicial intervention by this Court is unwarranted.

This Court has held that "a state may confer benefits on some and not others under equal protection, so long as its decision is rational." *Westbrook v. City of Jackson*, 665 So. 2d 833, 838 (Miss. 1995). Furthermore, in apportioning limited resources, governments "need not provide the same level of benefits to all recipients." *Baker v. City of Concord*, 916 F.2d 744, 748 (1st Cir. 1986). The rational basis standard of review is highly deferential to the legislative branch. *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000). Also, the United States Supreme Court has held that statutory distinctions based on the character of employment (i.e., service as a legislator versus as a state trooper) rather than its duration do not violate the equal protection clause. *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 178, 101 S.Ct. 453, 66 L.Ed. 2d 368 (1980).

Although some might question the wisdom, fairness, or logic of the Legislature's decision in establishing SLRP, that is not the function of this Court. It is clear United States Supreme Court precedent holds that so long as it is based upon the rational basis, the Legislature may properly establish a different system of benefits for a specific group such as we have here, i.e., Legislators and the Lieutenant Governor. In referring to the rational basis test, the Supreme Court stated: "Where there are 'plausible reasons' for Congress'

6

action, 'our inquiry is at an end.'" ***Beach Communications***, 508 U.S. at 313-14 (quoting, ***Fritz***, 449 U.S. at 179, 101 S.Ct. at 461). The Fifth Circuit has addressed this issue and in rejecting the claim of the Bureau of Narcotics Agents who challenged the separate retirement plan that the Mississippi Legislature established for the Mississippi Highway Patrol, noted that "if the challenged classification bears a reasonable relationship to the accomplishment of some legitimate governmental objective, the statute must be upheld." ***Anderson***, 631 F.2d at 1241. Additionally, that court noted that even though the argument of the narcotic agents appeared reasonable, the argument "is made in the wrong forum. It must be addressed to the Mississippi Legislature." ***Id.*** Thus, the remedy Dillard seeks from this Court is not judicial, but is political. The proper forum to address his concerns is the Legislature which clearly has the sole authority to establish different systems of benefits for any group including themselves, so long as the judgment of the Legislature has a rational basis for classifying that group differently.

Under ***Dye v. State ex rel. Hale***, 507 So. 2d 332, 344-47 (Miss. 1987), the Lieutenant Governor may properly exercise some legislative functions as delegated by the Senate. Therefore, the Legislature is within its authority to allow the Lieutenant Governor the privilege of participation along with the Legislature in SLRP.

The benefits which Dillard receives under PERS are in no way diminished by SLRP. Thus, he has failed to state a claim which could be deemed a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution. *See Jackson Firefighters*, 736 F.2d at 213. Dillard has alleged no harm that he has suffered

7

which can be distinguished from any other retiree who receives PERS benefits. Absent an allegation that Dillard's benefits were impaired, his complaint alleging SLRP created disproportionate benefits did not state a claim and Dillard's challenge must fail. *See **Heath v. New York State Teachers Ret. Sys.,*** 435 N.Y.S. 2d 136 (N.Y. App. Div. 1980). *See also **Patton v. Fed. Security Agency,*** 69 F. Supp. 282 (E.D.N.Y. 1946).

Here there are "plausible reasons" for the Legislature's actions and when the rational basis test is applied and considered, this Court cannot judge the wisdom of the adoption of SLRP. Such is the prerogative of the Legislature. There are clearly no material factual issues yet to be determined. We have it all before us at this time for decision. Dillard cannot prevail as a matter of law.

## CONCLUSION

There is no violation of the equal protection clause. *See **Fritz**,* 449 U.S. at 178 n. 11. The judgment of the chancery court is affirmed. Additionally, we affirm the special chancellor's holding that the Attorney General may represent PERS. It is unnecessary to address the other issues raised on appeal.

**AFFIRMED**.

**PITTMAN, C.J., WALLER, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. COBB AND DIAZ, JJ., NOT PARTICIPATING.**

**IN THE SUPREME COURT OF MISSISSIPPI**

**W. O. "CHET" DILLARD
AND OTHERS IN LIKE
OR SIMILAR CIRCUMSTANCES**

**v.**

**GOVERNOR RONNIE MUSGROVE,
LIEUTENANT GOVERNOR AMY TUCK,
HOUSE SPEAKER TIM FORD, AND
THE PUBLIC EMPLOYEES
RETIREMENT SYSTEM OF THE STATE
OF MISSISSIPPI IN THEIR OFFICIAL CAPACITY
AND NOT INDIVIDUALLY**

**PITTMAN, CHIEF JUSTICE, CONCURRING:**

I concur with the majority and write separately only to address Presiding Justice McRae's unprecedented behavior today. Today, only hours before this case was scheduled to be handed down, Justice McRae insisted that an internal e-mail sent by Justice Waller to the members of the Court be added to his dissent, believing, incorrectly, that it supports his attack on Justice Waller. No order of recusal has ever been issued by Justice Waller in this case, nor has any party ever sought his recusal. A majority of the Court has asked Justice McRae not to publish this informal, internal communication, and he has chosen to disregard that request. A majority of the Court meeting en banc approves this statement.

9

In order for an appellate court to function, justices must be able to communicate their thoughts to other justices in confidence by conference, memorandum or e-mail. It is through this communication and exchange of their initial thoughts that the Court comes to final decisions which are announced in the official opinions and orders of the Court. Until today, those communications have been held confidential.

This revelation of internal communications of the Court, over the objection of a majority of the Court's justices, appears to be in direct violation the Code of Judicial Conduct, including, but not limited to Section 2A and Section 3B(11). This action will be reported to the Mississippi Commission on Judicial Performance for appropriate disciplinary action.

SMITH, P.J. AND WALLER AND CARLSON JOIN THIS OPINION.

COBB, J. NOT PARTICIPATING ON THE MERITS OF THE CASE, JOINS THIS OPINION AS ADDRESSING MATTERS OF COURT ADMINISTRATION.

**WALLER, JUSTICE, CONCURRING:**

I concur with the majority, and I write separately only to state that the day before this opinion was to be handed down and issued to the public, Presiding Justice McRae inserted footnote #4 to his dissent, in which he relates that I had previously recused myself, and then later began participating in the case, "knowing that one of the litigants is his commander in chief in the National Guard." I presume that Presiding Justice McRae is referring to Governor Ronnie Musgrove.

10

To set the record straight, I have neither recused myself in this case nor entered an order of recusal. No party has filed a motion asking for me to recuse myself. Presiding Justice McRae has never chosen to present my participation in this case as an issue to the Supreme Court through established internal operating procedures.

I did, however, vote "not participating" in one circulation. The distinction between recused judges and judges who fail to take part for other reasons is fundamental. The law -- statutes, rules and case law -- mandates the nonparticipation of a judge disqualified by recusal. To recuse or disqualify a judge means to debar legally. A judge who merely abstains on a vote is a voluntary non-voter. *See Arnold v. Eastern Air Lines*, 712 F.2d 899, 903 n.3 (4th Cir. 1983) (en banc), cert. denied, 104 S. Ct. 703 (1984).

In conclusion, I believe that Justice McRae has created no reasonable basis for questioning my impartiality. I have done absolutely nothing improper or unethical. I deny that I possess any interest, bias, prejudice, or other mental attitude which would preclude me from acting objectively, fairly and impartially in the above entitled matter.

**McRAE, PRESIDING JUSTICE, DISSENTING:**


While I agree that the Special Judge correctly held that the Attorney General may represent PERS, I disagree with the majority's affirmance of the trial court's dismissal under M.R.C.P. 12(b). As a member of PERS, Dillard has standing to bring this challenge to the supplemental benefits conferred on other PERS members. The majority strains at a gnat's hair to find a reasonable basis for a select group to compensate itself over and above the

11

general public employees of this State. In effect it allows the Legislature to enhance themselves with a silent pay raise and allow it to circumvent the Constitution at the expense of all other state employees in the retirement system. *See* Miss. Code. Ann. § 96 and § 272 (A). This is not like the Highway Patrol group in which they set up a separate retirement system with separate boards of trustees and giving a legitimate reason for having done so. This is a "retirement system" within the retirement system causing the other participants to have to incur expenses to pay for a few to have additional benefits over and above the state employees under this system. To say that Dillard has no standing to file this suit is disingenuous. Based on the  simple filing of a motion to dismiss under M.R.C.P. 12 (b) the trial court cut him off by not allowing any proof of facts. Then, in its rush to grant the legislators this extra benefit over and above all other state employees, the majority uses facts that are not in the pleadings to preclude Dillard from going forward. One wonders if the majority is seeking certain legislation to be part at this time.[4] This simply should not occur under the equal protection clause of our Constitution. The four factors that the majority lists as reasons would apply to any public official in this State. To say that the Lieutenant Governor who is a member of the executive branch and who has some duties in the legislative branch can be pulled into and be given benefits because of it, is disingenuous. This case should be reversed and remanded. Accordingly, I respectfully dissent.

---

[4] Justice Pittman talked Justice Waller, who had recused himself, to get back into the case in order to have a majority knowing that one of the litigants is his commander in chief in the National Guard.

12

Our highway patrolmen have a **separate** retirement system, and the cost of administering that system is absorbed by the members of that system. The expenses for SLRP are paid by everyone under PERS. *See* Miss. Code Ann. §§ 25-13-27 & 25-11-307 (3). Moreover, SLRP is not a **separate** retirement system, but rather is a **supplement or addition** to PERS for members of the Legislature and the Lieutenant Governor. Therefore, the majority's comparison to the Highway Patrol's **separate** retirement system is of little import here.

This case comes down to whether a selective group can have **additional** benefits, and in essence, double dip from the **same** general retirement system. There was no actuarial study done as to the impact that all other employees would suffer at the hands of a select few. The rational basis for allowing the Patrol to have a separate retirement system from the general system is completely different and distinguishable from the case sub judice. However, the Legislature has attempted to use the same rational basis factors that applied to th.e Highway Patrol in *Anderson* (the comparative dangers and the need to attract the most capable and qualified persons) and certain firefighters and policemen in *Jackson Firefighters* (the time of employment and the fiscal integrity of the system) to apply to a **supplemental fund** of the general retirement fund for legislators and the Lieutenant Governor.

As the majority states, the rational basis factors given for the enactment of SLRP are (1) the inherent uncertainty in holding a legislative office, (2) the hours during which the legislators are on call to their constituents; (3) the time taken away from other gainful

13

employment or business enterprise; and (4) the need to attract capable, qualified persons to these elected positions.

The invocation of these factors, however, is but a weak attempt at parroting the factors used for highway patrolmen and firefighters in order to establish a rational relation to a legitimate state interest so that the statute would seemingly hold constitutional muster. Indeed, "uncertainty in holding office" is in no way comparable to the potentially deadly peril patrolmen face on a daily basis. While these factors may be legitimate if the Legislature established a **separate** retirement system, that is not what has been created here. SLRP is a **supplemental** system under which the Lieutenant Governor and members of the Legislature are entitled to receive benefits **in addition to** the benefits they receive under PERS.

It must be determined, therefore, whether the equal protection clause is violated by allowing a particular group to double dip by drawing supplemental benefits from the same retirement system. To make this determination, more facts need to be established.

The trial court essentially treated the defendants' Rule 12(b) motion to dismiss as a motion for summary judgment. Both sides agreed that no facts were needed for the motion for summary judgment. However, the court went further on the pending motion to dismiss and dismissed it, holding that there was no substantial basis under equal protection. In this case, other factors need to be resolved before that determination can be made, including how much money has been put into SLRP by the legislative members from which they can draw under the bill that was pending at the time. Also, the Legislature repealed only a portion of

the statute; the supplementation is still there. Further, the Legislature selectively put in as a participant the Lt. Governor, a member of the executive branch who also has duties in the legislative branch.

The Lieutenant Governor is a full-time member of the executive branch, but since she serves as President of the Senate when the Legislature is in session, she is considered part of the legislative branch for purposes of SLRP and is allowed to draw retirement under both PERS and SLRP. This dual classification creates an arguable violation of the separation of powers provision of our Constitution.

The Mississippi Constitution of 1890, Art. 1, Sec. 1 provides:

> The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Further, Article 1, Section 2 states:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

While we have held that it is not a violation of the separation of powers doctrine for the Lieutenant Governor, a full-time member of the executive branch and the President of the Senate, to exercise certain legislative functions as delegated by the Senate through Senate Rules and not in violation of our Constitution, we have not addressed the dual capacity in

15

relation to collecting from one retirement system twice. *See **Dye v. State ex rel. Hale***, 507 So.2d 332 (Miss. 1987). This matter clearly needs to be addressed by the trial court.

While the trial court dismissed this under M.R.C.P. 12(b) the trial court did not allow additional facts to be pled and granted a final judgment. Under our rules, a plaintiff is entitled to amend to allege additional facts, M.R.C.P. 15(a), and this was not done. Indeed, additional factors need to be addressed and resolved to determine the constitutionality of SLRP. The constitutionality of the SLRP retirement system for this select group should not be resolved on a Rule 12(b) dismissal, it should only be done after a full trial. While the legislators may be able to prove that there is a reason for a separate retirement system, it should not be allowed to have their own retirement system based on the shoulders of all public employees that come under PERS. This was not done with the Highway Patrol or the Bureau of Narcotics. The majority has opened a Pandora's box; any set of public officials can give the same "logical" rational basis of factors to grant separate retirement systems for any group that can curry the favor of the legislators. "The inherit uncertainty in holding a office, the hours the legislators work, on call to their constituents, the time taken away from other gainful employment or business enterprise, and the need to attract capable qualified persons to this position" will fit any public office, and there is no basis given as to why none of the others particularly firefighters cannot get the same SLRP retirement benefits.

On this limited record, I refuse to accept the apparent premise of both the Legislature and the majority that a few privileged members of PERS are more equal than others. Accordingly, I dissent.

16