# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00537-COA

**STEVEN W. WHITE A/K/A STEVEN WAYNE WHITE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2020 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVEN W. WHITE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MICHAEL DEWAYNE WILSON SR. |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND RENDERED - 02/23/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Steven White appeals from the denial of a motion for post-conviction relief. White alleges that the circuit court improperly revoked five years of his post-release supervision (PRS) for his failure to report to his probation officer. For the reasons discussed below, we agree that White's revocation was improper. Therefore, we reverse and render the judgment of the circuit court and order that White be released and returned to PRS.

### FACTS AND PROCEDURAL HISTORY

¶2.     On December 20, 2017, White pled guilty to possession of less than ten grams of methamphetamine with intent to sell. The DeSoto County Circuit Court sentenced him to

time served (sixty-seven days) and seven years of PRS, with five years of reporting and two years non-reporting. *See* Miss. Code Ann. § 47-7-34 (Rev. 2015) (authorizing a term of PRS following a term of incarceration).

¶3. On January 30, 2018, White's probation officer filed a petition to revoke White's PRS, alleging that White had never reported for intake. The petition alleged,

> [White] contacted the [probation] office on 12/21/17 advising that he was in Memphis, TN at a Rehabilitation Center called Capps.[1] [White's probation officer] advised [White] that he was supposed to report upon being released for intake. [White] stated that he had an addiction and he checked into rehab to get help. [White] also stated that he has no transportation and no phone to be reached at and that he would report as soon as possible. Failure to report letter mailed on 1/3/2018. The letter was returned to the office with a note that states the address is no longer good.

¶4. The docket in White's criminal case indicates that the court issued a warrant for his arrest on January 31, 2018, and that the warrant was executed and returned on August 31, 2018. White waived his right to a preliminary revocation hearing. His waiver was dated August 5, 2018, and filed on September 7, 2018. The court held a brief revocation hearing on September 13, 2018. At the outset of the hearing, Probation Officer Brad Benton stated,

> Your Honor, this is Agent Johnson's case, and I spoke with her about it, and she stated that Mr. White is homeless. And I spoke with Mr. White before court, and Mr. White wants to get some rehab. He's got a drug addiction, and he wants help with it.
>
> When I talked to Agent Johnson she really didn't know what to do with him because he is homeless. He doesn't have transportation. He doesn't have a way to report. So she said she didn't know if it would be better for him to be in prison and locked up or for him to be in some kind of program.
>
> So after talking with Mr. White today, I think for Mr. White's best

---

[1] There is a rehabilitation program in Memphis known as "CAAP."

interests, if we could place him in a technical violation center in a rehab program and have him stay as long as he can since he has nowhere else to go until he completes the program. That would probably be in his best interest.

White told the court he agreed with Benton's recommendation, and the court accepted the recommendation. The court entered an order finding that White had violated the terms of his PRS by "fail[ing] to report as scheduled for intake." The court revoked 180 days of White's PRS, ordered him to complete a drug rehabilitation program while incarcerated at a technical violation center (TVC), and directed that he would be released from the TVC upon completion of the program or after 180 days, whichever occurred first.

¶5. On February 4, 2019, the Mississippi Department of Corrections (MDOC) filed a notice that White would be released on February 24, 2019. The notice stated that White was "being released due to Completion of Technical Violation Center."

¶6. On March 6, 2019, White's probation officer filed a petition to revoke White's PRS. The petition alleged that White had "failed to report to the Hernando Probation Office for supervision upon being released" from the TVC on February 25, 2019. The docket in White's criminal case indicates that the court issued a warrant for White's arrest on March 7, 2019, and that the warrant was executed and returned on September 9, 2019. White waived his right to a preliminary revocation hearing. His waiver was dated and filed on September 10, 2019. The court held a brief revocation hearing on October 11, 2019, which proceeded as follows:[2]

The Court:    I signed an order on September the 13th, 2018, revoking 180

---

[2] We reprint the material portion of the hearing transcript verbatim with only formatting changes for clarity.

3

days of your [PRS] because you failed to report for your intake. You were to complete the drug rehabilitation program while you were incarcerated at the [TVC], and you were to be released upon completion of the drug rehab or the 180 days, whichever should first occur. It looks like on the 6th day of March, 2019, [Probation Officer Johnson] filed an affidavit saying that you failed to report to the [MDOC] after being released from the [TVC]. And a petition was filed on March the 6th, 2019, to revoke your probation. A warrant was issued for your arrest with those allegations. Are you ready to proceed today, sir?

White:      Yes, sir.

The Court:  Ms. Johnson?

Johnson:    Judge, you just stated he failed to report within 24 hours upon being released from the [TVC] on February the 25th of 2019. When I spoke with him at the jail, he stated that he was homeless. He had nowhere to go or whatever. So, I mean, it's clear to see that he's not going to report. He's not able to report. So I want to recommend five years being revoked because this is his third revocation. So once he's done with those five years, then he'll be done with his reporting. I guess.

The Court:  What do you think, Mr. White?

White:      I'm homeless. Every time I get out, I've got no ID, no birth certificate, nothing, nowhere to go. This is my second violation. You give me six months with the first one, sent me down to do drug treatment. I never got drug treatment. Never even went to TVC. I went to Rankin County and spent my whole time in Rankin County.[3]

The Court:  The Court's going to find that you violated your [PRS] by failing to report; that this is your third violation. The Court will revoke five years of [PRS], give you credit for the time that you've served.

White:      Second violation?

---

[3] There is nothing else in the record to show the facility at which White was incarcerated or whether he ever received treatment.

The Court:  I thought you said it was his third.

Johnson:    This is your third revocation.

White:      This is the second time I've been here.

Johnson:    No.  This is the third revocation.

The Court:  And be given credit for 36 days served in custody.  That will be the sentence of the court.

Officer Johnson was mistaken.  The revocation was White's second, not his third. Nonetheless, the court accepted Johnson's representation over White's objection. Following the hearing, the court entered an order revoking five years of White's PRS based on White's "[f]ailure to . . . [r]eport within 24 hours of release from . . . incarceration."

¶7.     On December 20, 2019, White filed a motion for post-conviction relief,[4] alleging, among other things, that the court had erred by sentencing him to 180 days in a TVC for his first technical violation and by revoking five years of his PRS sentence for his second technical violation.

¶8.     On April 28, 2020, the circuit court denied White's motion without holding a hearing or directing the State to respond.  The court's order acknowledged that White's PRS had only been revoked twice, not three times.  However, the court ruled that it had properly revoked five years of White's PRS pursuant to Mississippi Code Annotated section 47-7-37.1 (Rev.

---

[4] White's pleading was styled as a petition for habeas corpus, but any "pleading cognizable under the [Uniform Post-Conviction Collateral Relief Act (UPCCRA)] will be treated as a motion for post-conviction relief that is subject to the [Act], regardless of how the plaintiff has denominated or characterized the pleading." *Knox v. State*, 75 So. 3d 1030, 1035 (¶12) (Miss. 2011).  A petition alleging an unlawful revocation of PRS is cognizable under the UPCCRA.  Miss. Code Ann. § 99-39-5(1)(h) (Rev. 2015).  Therefore, White's pleading is treated as a motion for post-conviction relief.

2015), which provides:

> Notwithstanding any other provision of law to the contrary, if a court finds by a preponderance of the evidence, that a probationer or a person under [PRS] has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence. For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months.

The court stated that "White had absconded" both times he was released on PRS, reasoning that because "he never reported, White did not report for six consecutive months." White subsequently filed a notice of appeal.

## ANALYSIS

¶9.     For multiple reasons, White's revocations were improper. Therefore, we reverse and render the judgment of the circuit court and order White's release on PRS.

¶10.    To begin with, the circuit court erred when it revoked five years of White's PRS based on Officer Johnson's representation that the revocation was White's "third revocation." Mississippi Code Annotated section 47-7-37 (Supp. 2019)[5] provides for the following graduated sanctions for violations of conditions of PRS:

> If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a [TVC] or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. *For the third revocation*, the court may impose a period of imprisonment to be served in either a [TVC] or a restitution center for up to one hundred eighty (180) days *or the court may impose the remainder of the suspended portion of the sentence*.

---

[5] "Procedures for termination [of PRS] and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence as required pursuant to Section 47-7-37." Miss. Code Ann. § 47-7-34(2) (Rev. 2015).

*Id.* § 47-7-37(5)(a) (emphasis added).[6]  Thus, the court may impose the offender's full remaining suspended sentence for a "third revocation."  However, White's PRS had only been revoked twice.  Accordingly, the circuit court could not revoke five years of White's PRS on the ground that it was his third revocation.

¶11.   In its subsequent order denying White's motion for post-conviction relief, the circuit court recognized that White's PRS had only been revoked twice, but the court justified the revocation on a new ground—that White had "absconded."  The State makes the same argument on appeal.  This argument fails, however, because the circuit court did *not* find that White had absconded at the time of either revocation, and the record from the revocation proceedings is insufficient to support such a finding.

¶12.   As stated above, section 47-7-37.1 permits the court to revoke any or all of a term of PRS "*if [the] court finds* by a preponderance of the evidence" that the offender "has absconded," i.e., failed "to report to his supervising officer for six (6) or more consecutive months."  Miss. Code Ann. § 47-7-37.1 (emphasis added).  In this case, the circuit court made no such finding in either of its revocation decisions.  Rather, as discussed above, the

---

[6] The Legislature amended the statute in 2018, after the first petition to revoke White's parole was filed but prior to his first revocation hearing.  *See* 2018 Miss. Laws ch. 416, § 11 (H.B. 387).  The amended version of the statute is quoted above in the text.  As amended, the statute makes clear that its application turns on the number of times the offender's PRS has been revoked for one or more technical violations, not the total number of technical violations the offender has committed.  The amendment effectively overruled prior decisions of the Supreme Court and this Court, which had interpreted the prior version of the statute as dependent on the number of violations, not the number of revocations.  *See Walker v. State*, 230 So. 3d 703, 705-06 (¶¶12-13) (Miss. 2017); *Cobbert v. State*, 223 So. 3d 822, 824-26 (¶¶6-15) (Miss. Ct. App. 2017).  The amendment had no effect on White's case because both of his revocations were based on a single violation.

court simply found that White failed to report upon release. Moreover, no evidence was presented at either revocation hearing regarding how long White failed to report, nor was there any mention of "absconding." In addition, at the conclusion of the second revocation hearing, the court revoked five years of White's PRS because Officer Johnson erroneously informed the court that the revocation was White's third, not because the court found that White had "absconded." Section 47-7-37.1 applies only "if [the] court finds by a preponderance of the evidence" that the offender "has absconded." *Id.* Because the court made no such finding when it revoked White's PRS, this statute cannot support the revocation of five years of White's PRS. *Id.*

¶13. In addition, the record in the revocation proceedings was insufficient to support a finding that White absconded. The circuit court's order denying White's motion for post-conviction relief stated that White "did not report for six consecutive months," but the court did not cite to any evidence from either revocation hearing regarding the length of White's failure to report. As stated above, no such evidence was presented. In its brief on appeal, the State also argues that White absconded, but the State relies on factual assertions and dates that are not supported by the record. The State asserts that White failed to report after his December 2017 release until he "was arrested on August 29, 2018." The State also asserts that White failed to report after his February 2019 release until he "was arrested" "[o]n September 6, 2019[.]" However, contrary to the Mississippi Rules of Appellate Procedure, the State failed to provide a citation to the record to support either assertion. M.R.A.P. 28(a)(7) & (f). Based on our own review of the docket and record in White's criminal case,

these *may* be the dates on which White was arrested. But we are unable to find either date in the record, and unsupported "[f]actual assertions raised in appellate briefs are not evidence . . . ." *Abercrombie v. Abercrombie*, 193 So. 3d 680, 683 (¶9) (Miss. Ct. App. 2016).[7] Put simply, the limited evidence that was actually presented in White's revocation hearings does not support a finding that White "absconded."

¶14.    We also conclude that the circuit court improperly revoked White's PRS because at both hearings the State informed the court that White was *unable* to report. At White's first revocation hearing, Officer Benton stated, "[White] doesn't have transportation. He doesn't have a way to report." At White's second revocation hearing, his probation officer, Officer Johnson, again noted that White was homeless and stated, "He's not able to report." The record does not explain why White's homelessness would have completely prevented him from reporting, and the court did not inquire regarding the issue at either hearing. This gap in the record leaves us with only the uncontradicted statements of two probation officers—the State's representatives at these hearings—that White was not able to report.

¶15.    It is well-established that a court cannot "deprive [a] probationer of his conditional freedom simply because, through no fault of his own, he cannot pay" fines or restitution. *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983). "Such a deprivation would be contrary to the fundamental fairness required by the [Due Process Clause of the] Fourteenth

---

[7] *See also, e.g.*, *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983) ("We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.").

9

Amendment." *Id.* at 673. Logically, the same rule would apply to a reporting requirement, and therefore a court also cannot revoke an offender's PRS or probation "simply because, through no fault of his own, he" is unable to report. *Id.* at 672-73. Here, the circuit court revoked five years of White's PRS despite his probation officer's uncontradicted statement that White was "not able to report." We conclude that such a revocation violates due process and must be set aside for that reason as well.

¶16. Finally, the reasons given for White's revocation are simply arbitrary. As noted above, Officer Johnson made the following recommendation to the circuit court:

> When I spoke with [White] at the jail, he stated that he was homeless. He had nowhere to go or whatever. So, I mean, it's clear to see that he's not going to report. He's not able to report. So I want to recommend five years being revoked because this is his third revocation.[8] So once he's done with those five years, then he'll be done with his reporting. I guess.

In short, Johnson recommended that because White was "not able to report," the court should incarcerate him for five years, at which point White would "be done with his reporting."[9] The court accepted Officer Johnson's recommendation.

¶17. The revocation of White's PRS because of his inability to report furthered no legitimate state interest. A rational response to a probationer who legitimately is "not able to report" because of homelessness or other circumstances beyond his control would be to

---

[8] We have already discussed above that Officer Johnson was mistaken regarding this fact—the revocation was White's second, not his third—and that the mistake was critically important under our statutory scheme. *See* Miss. Code Ann. § 47-7-37(5)(a).

[9] Five years is the maximum period an offender on PRS may be required to report to MDOC. *Sweat v. State*, 912 So. 2d 458, 460 (¶5) (Miss. 2005). The court may sentence a defendant to a longer term of PRS, as the court did in this case. *Id.* However, the portion of the term in excess of five years becomes "unsupervised," or non-reporting, PRS. *Id.*

10

figure out some way to help him report. In contrast, it is arbitrary and irrational to simply incarcerate him until his reporting requirement expires.

¶18. The Mississippi Constitution provides that "[n]o person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. art. 3, § 14. The phrase "due process of law" has been "interpreted to mean that the government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power." *State v. Jones*, 726 So. 2d 572, 574 (¶10) (Miss. 1998) (quoting *Albritton v. City of Winona*, 181 Miss. 75, 97, 178 So. 799, 804 (1938)). The revocation decision at issue here was not reasonably related to the purposes of probation but was instead "so far beyond the necessity of the case as to be an arbitrary exercise of governmental power." *Id.* Thus, the revocation violated White's right to due process of law and must be set aside for that reason as well.

¶19. A reporting requirement is a critically important condition of PRS because it allows the probation officer to monitor the offender's progress and compliance with all other conditions of his supervised release. By setting aside White's revocation, we do not suggest that a probationer's homelessness always or necessarily excuses his failure to report. To the contrary, in most cases it will *not* excuse such a violation. But *in this case*, the only relevant evidence in the record is the probation officer's on-the-record statement that White was "not able to report" because of his homelessness and other circumstances. On this record, White's inability to report was not a valid reason for revoking his PRS.

**CONCLUSION**

¶20.    In summary, the circuit court erred by revoking five years of White's PRS based on the probation officer's erroneous representation that White's PRS had been revoked three times; the circuit court did not find that White had "absconded" during either of White's revocation hearings, and, moreover, the record from the revocation proceedings does not support such a finding; and the revocation of White's PRS because he was "not able to report" was arbitrary and violated his right to due process of law. Therefore, we reverse and render the judgment of the circuit court, set aside both orders revoking White's PRS, and order White's release and return to PRS.

¶21.    **REVERSED AND RENDERED.**

        **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**